## COON *v*. STATE.

### Opinion delivered October 6, 1913.

1. LARCENY—FRAUDULENT BET—PARTING WITH POSSESSION.—Where several persons conspire to cheat a man under color of a bet, and he merely deposits his money as a stake with one of them, not meaning thereby to part with the ownership therein, the persons taking the money are guilty of larceny. (Page 353.)

2. ROBBERY—SNATCHING PROPERTY FROM ANOTHER.—Snatching property or money from the hand of another is not robbery, unless some injury is done to the person, or there is some previous struggle for the possession of the property, or some force used to obtain it. (Page 354.)

3. CRIMINAL LAW—LESSER CRIME INCLUDED IN HIGHER.—Where a de-- fendant might have been indicted for robbery, the State has the right to elect to indict for the crime of larceny which is embraced therein, and seek a conviction for the crime of larceny, ignoring the higher offense. (Page 354.)

4. APPEAL AND ERROR—OBJECTION TO ADMISSION OF TESTIMONY—EXCEP- TION, HOW SAVED.—In order to properly preserve an objection to a ruling of the court upon testimony and the exception to the ruling, the complaining party should ask for a ruling of the court upon his objection. (Page 355.)

5. APPEAL AND ERROR—PRESENCE OF SPECIAL COUNSEL IN GRAND JURY ROOM.—The presence of special counsel in the grand jury room with the prosecuting attorney or his deputy, at the request of the prosecuting attorney and for the purpose of assisting in the prose- cution, does not vitiate the proceedings of the grand jury. (Page 356.)

6. EVIDENCE—CO-CONSPIRATOR.—Testimony of a co-conspirator, as to acts done by another conspirator before the consummation of the conspiracy are admissible in a trial of the latter. (Page 356.)

7. CONTINUANCE—DISCRETION OF COURT.—Refusal of trial court to grant a continuance in order that depositions might be taken or wit- nesses produced for the purpose of impeaching the prosecuting witness, *held* not to be an abuse of the court's discretion. (Page 357.)

8. JURIES—ADDITIONAL LIST OF NAMES—PRESENCE OF THE COURT.—Under Kirby's Digest, § § 4510 and 4511, which provides that an addi- tional list of jurors shall be furnished by the jury commissioners, and that the list shall be opened in the presence of the court, *Held*, when the list has been once opened in the court's presence at a former trial, it may be used again at a subsequent trial at the same term. (Page 358.)

9. TRIAL—CLOSING ARGUMENT.—Kirby's Digest, § 2388, does not require that the closing argument in a criminal prosecution shall be made by the prosecuting attorney, but may be made by counsel specially engaged in the prosecution. (Page 359.)

Appeal from Garland Circuit Court; *Calvin T. Cot- ham,* Judge; affirmed.

*C. Floyd Huff, Bradshaw, Rhoton & Helm,* and *X. O. Pindall,* for appellant.

1. The indictment should have been quashed be- cause of the presence in the grand jury room, while they were taking testimony and investigating the case, of an attorney employed by the prosecuting witness for the

purpose of prosecuting appellant. Kirby's Dig., § 2211; 7 Tex. App. 519; 126 Pa. St. 53, 12 Am. St. Rep. 894, and notes at page 900.

2. Under the evidence adduced in this case, if any crime was committed, it was the crime of robbery, and not larceny, and the court erred in refusing to instruct the jury at appellant's request, that, if they so found, they should acquit.

3. In view of the understanding of appellant's counsel that the depositions of witnesses to be used at the trial of the Ryan case could also be introduced and read in evidence in this case, and their understanding that such order had been entered of record, and so believed until after the trial of this case had begun, appellant was placed at a great disadvantage in not being permitted to introduce said depositions, and it was reversible error to refuse appellant's motion for a postponement, the same being a manifest abuse of discretion.

4. It was reversible error to allow the criminal conduct and declarations of one of the conspirators to be admitted in evidence against appellant, such conduct and declarations being after the alleged criminal enterprise was ended. *Id.* 467; 92 Ark. 592; 67 Ark. 235; 59 Ark. 430.

5. It was error to permit the paid attorney, instead of the prosecuting attorney, to close the argument on the part of the State. Kirby's Dig., § 2388.

*Wm. L. Moose,* Attorney General, and *Jno. P. Streepey,* Assistant, for appellee.

1. There was no error in overruling the motion to quash the indictment. The attorney whose presence is complained of was present with the grand jury, not only with the consent of the prosecuting attorney, but also at his request. 62 Ark. 516; 108 Ark. 89; *Timer* v. *State,* 109 Ark. 138.

2. The testimony of the witness, Fox, does not disclose any of the elements of robbery, but the taking of the money falls within the terms of the larceny statute. 61 Ark. 594, 597.

3. In the light of the evidence that counsel for the State signed no stipulation that the depositions taken in the Ryan case could be used in the other cases growing out of this transaction, including this, but announced at the time that the order to take depositions was made that the State would enter into no stipulations, and that appellant's counsel themselves announced that they desired to deal at arm's length, there was no abuse of discretion in denying the motion for a postponement. Moreover, the evidence thus sought to be introduced was merely cumulative. 94 Ark. 172; *Id.* 545, 547.

4. There was no error in admitting evidence and declarations of coconspirators. The record shows that the design of the conspirators was not ended but in process of consummation when Witt stated to Fox that appellant had just lost the $46,700. Moreover, there was no proper exception to this evidence, no objection pressed to a ruling. 74 Ark. 256; 84 Ark. 128, 130; *Easley* v. *State,* 109 Ark. 130.

5. The State was entitled to the closing argument. If the prosecuting attorney elected to have associate counsel in the prosecution to close the argument instead of doing so himself, that was a matter for him to decide, and appellant has no cause for complaint.

McCULLOCH, C. J. The grand jury of Garland County returned an indictment against appellant, charging him with the crime of grand larceny, committed by stealing, taking and carrying away $20,000 in paper money, the personal property of one Frank P. Fox, and on a trial before a jury the defendant was convicted and sentenced to the penitentiary.

The facts of the case, as adduced from the State's testimony, accepting it as true in its strongest light, are about as follows: Fox resides in the State of Indiana, and is said to be a man of considerable wealth. He had an acquaintance in that State named Worth, who was also an acquaintance of appellant. The three met in a bar room in Terre Haute, Ind., and appellant (who was introduced to Fox under the name of Ward) reported

to Fox that his brother-in-law, one Denton, was assistant manager of the Indiana Club, a gambling house in the city of Hot Springs, Arkansas; that Denton was dissatisfied with the management because he had not been paid his full share of the profits, and had arranged with the dealer of the roulette wheel to "fix" the wheel so that a player would be sure to win, and that all that was needed was some man of wealth to play the wheel and secure large winnings. He said they wanted to interest a man known to be wealthy so that his playings would appear to be in good faith. Appellant and Worth proposed to Fox that he go into the scheme as the wealthy man of the party, and that the winnings would be divided. Fox readily accepted the offer, and the trio at once departed for the field of operations at Hot Springs. When they reached the latter place, they were met at the train by a man who gave his name as Joe Denton, but whose real name was "Jimmie Johnson," and who, according to the theory of the State, was a party to the scheme to swindle Fox. Denton conducted the party up to the hotel, and, after they had registered, all of them repaired to the club rooms late in the afternoon for the purpose of practicing the fraudulent game on the roulette wheel so that when the real play came off at night they would know how to play the right numbers. The dealer of the wheel was into the scheme, and Fox and Worth were fully instructed as to what numbers to play. After the practice was over, the party went back to the hotel, and returned to the club rooms after the evening meal for the purpose of starting the play. Fox purchased $20,000 worth of chips, and gave his check on a bank in Illinois. He began playing the wheel, and in a few minutes — not over ten or fifteen minutes, according to his statement—he won $26,700, without sustaining any losses, and upon signal from Denton, quit playing, it having been understood between them that the winnings should not be too large for fear that the management would suspect the trick. This gave him chips, including his winnings and his original stake, ag-

gregating the sum of $46,700, and he started to cash the chips. When the money was being counted out to him, he asked for the return of his check, and about that time a man calling himself Wilt, and claiming to be the manager of the club, walked in and said, "What check is that? Is it an out-of-town check?" and, upon being informed that it was, said, "I thought I told you not to take any more out-of-town checks." Some argument ensued between Wilt and the party, composed of Denton, Fox, Worth and appellant, about the check being accepted contrary to the rules of the club, and Wilt proposed that he would give a due bill for the amount owing to Fox ($46,700), and pay the same as soon as the check should be paid. Fox demurred to this on the ground that it would take too long to send the check through various banks for collection, and proposed that the manager hold the check, and he keep the due bill until he could go back to Indiana and bring down $20,000 in money as an evidence of the fact that his check had been given in good faith, and would have been paid. This plan was agreed upon, and Fox made an endorsement on the back of his check, showing that the same was not to be deposited for collection. He went back to Indiana, secured the $20,000, and returned in company with Worth. When they reached Hot Springs they again repaired to the gambling room (the same parties, Fox, Worth, Denton and appellant, being present), and Fox produced the $20,000, and also presented his due bill at the same time for payment. He counted the money in the presence of Wilt, who claimed that he had followed the count, and that only $18,500 was in the roll, and he took it out of Fox's hands—"snatched it," as Fox states—and proceeded to count it himself, and after verifying the amount and finding that there was $20,000 in the roll, placed it in a drawer. Wilt then proceeded to count out the money for the purpose of cashing the due bill, but found, or pretended to find, that he was short $10,000 of enough money to pay the due bill, whereupon he offered to give his check for the $10,-000, which Fox, upon the suggestion of Worth, declined

to accept for the reason that the manager had declined to accept his check. Wilt then proposed that the party wait while he sent out to the bank and got a $10,000 check cashed, and this was agreed upon. They went into an adjoining room, and spent the time of the delay in drinking wine. After they had drunk a glass or two, Denton handed the due bill to appellant and said, "You don't drink much; take this order and go in there and talk with the old man" (meaning the so-called manager, Wilt). Appellant left the room as he was bidden, and, after being absent a short time, returned hurriedly into the room, and as he came through the door, he was crying and said, "What will we do? I lost $26,000 of that money." Denton struck him a light blow, and the operator of the wheel came through about that time, and said, "You damn fool, what did you play that wheel for? I had the works in my pocket; no wonder you lost. Get out of here; we are done with you forever." Whereupon appellant left the room and was heard of no more until he was arrested in Chicago, except a brief conversation held with Fox a little while afterward at the hotel. A few minutes after appellant left, Wilt stated to Fox that appellant had lost the $46,700 playing the wheel, and another of the party verified this statement, saying that appellant had played the checks, "like money grew on trees in his part of the country." Wilt kept the $20,000 which he had taken out of the hands of Fox, and the latter left the place.

The indictment of appellant and others of the party followed.

Fox testified that he exhibited the $20,000 merely as an evidence of his good faith in giving the check for chips, and that he had no intention of parting with the title to the money.

Appellant testified in his own behalf, and corroborated Fox's statement as to most of the details of the transaction, but he testified that he took the due bill and played the amount of it off on the wheel at the suggestion of Fox and Worth. He testified that Denton told

Fox that he thought it would be a good idea, while the "old man" (Wilt) was in the room, for them to play part of the money off, and that he kept up the play too long, the inference from his statement being that this was caused by the exhilaration from the wine drinking. He said, however, that Fox was present during his play. He claimed that he had been told that the wheel would be "fixed," and that he entered into the arrangement with Fox and Worth in good faith to beat the wheel under a promise that he would be given part of the winnings.

The issue was sharply drawn in the testimony before the jury as to whether Fox delivered the money ($20,000) with intent to part with the title, and whether he consented to the last playing of the wheel when the whole of the winnings and the original stake were lost by appellant. The court submitted those questions to the jury upon proper instructions, and the issue has been settled against appellant.

The law applicable to this case is decided in the two cases of *Hindman* v. *State*, 72 Ark. 516, and *Johnson* v. *State*, 75 Ark. 427. In those cases the law was stated as follows:

"Where several persons conspire to cheat a man under color of a bet, and he simply deposits his money as a stake with one of them, not meaning thereby to part with the ownership therein, they, by taking the money committed larceny none the less, though afterward they are by fraud made to appear to win."

In the Hindman case, the indictment was for the crime of larceny, and this court reversed the judgment of conviction because the trial court gave instructions which ignored the question whether the injured party had delivered the money to the stakeholder with intention to part with the title.

In the Johnson case that issue was correctly submitted to the jury, and the judgment of conviction for the crime of larceny was affirmed.

In the present case that issue was, as before stated, correctly placed before the jury in appropriate instruc-

tions. The instructions are numerous, and need not be set forth here at length. Suffice it to say that the appellant's criticisms are unfounded. The facts of this case, if the testimony of the State's witnesses is believed, make out a case of larceny according to the rule announced in those cases.

Appellant asked several instructions telling the jury, in substance, that if the money was snatched from the hands of Fox without the latter's consent, the crime would be robbery, and not larceny, and that appellant could not be convicted under this indictment. The court refused to give those instructions, and counsel for appellant now insist that such refusal constituted error.

The court was correct in refusing the instructions, because the evidence did not make out a case of robbery, for the mere snatching of the roll of money from the hands of Fox did not, of itself, constitute the crime of robbery. "It is well established," said this court in the case of *Routt* v. *State,* 61 Ark. 594, "that the snatching of money or goods from the hand of another is not robbery, unless some injury is done to the person, or there be some previous struggle for the possession of the property, or some force used in order to obtain it."

But even if the facts of the case constituted the crime of robbery, it would have been incorrect to give an instruction to the jury that on that account the accused should be acquitted of larceny, the crime charged in the indictment. The charge of robbery includes a charge of larceny, and even though the accused be guilty of the higher offense of robbery, the State has the right to elect to indict for the crime of larceny which is embraced therein, and seek a conviction for the crime of larceny, ignoring the higher offense. *Routt* v. *State, supra.*

Error of the court is assigned in permitting the State to introduce the statement of Wilt, the so-called manager, made to Fox, a few minutes after appellant had left the gambling place, to the effect that he (appellant) had lost the $46,700 playing the wheel. It is insisted that this violated the rule of evidence that the admissions of co-

conspirators are not admissible against each other after
the purpose of the conspiracy had been consummated.
The alleged exception appears in the records as follows:
"Q. What did you do immediately after that A. I went
back into the ladies' room where the wheel was. Q. Who
was in there when you got back? A. Mr. Wilt and Mr.
Ryan, and I asked Mr. Wilt what—" (Mr. Rhoton: "I
object to all this and save exceptions.") (Witness, con-
tinuing): "I asked Mr. Wilt what Ward had lost, and
he said he lost $46,700."

In order to properly preserve an objection to a rul-
ing of the court upon testimony and the exception to the
ruling, the complaining party should ask for a ruling of
the court upon his objection. It does not appear in the
record that this was done, for the objection and exception
were made at the same time, and no ruling was asked.
The witness was permitted to continue with his state-
ment without any ruling of the court being asked for.
But even if an exception had been properly preserved,
we are of the opinion that the testimony did not violate
the correct rule of evidence. According to the State's
theory, the scheme was to secure possession of Fox's
money, and then retain possession under false pretense
that it had been played off in gaming at the wheel. If
this was true, the purpose of the conspiracy was not con-
summated until the false pretense was made to Fox which
induced him not to insist on return of his money. In
other words, it was a part of the conspiracy to pretend
to Fox that his money had been lost in play at the wheel,
and in making the alleged statement to Fox, Wilt was
only carrying out a part of the plan embraced in the con-
spiracy. He was merely "making away with the goods,"
so to speak. The conversation occurred within a few
minutes after appellant had left the room, and was really
a part of the transaction whereby the false pretense was
made to Fox. In addition to that, we are clearly of the
opinion that no prejudice could have resulted to appel-
lant from this testimony, because the alleged statement
made by Wilt was precisely what appellant testified to

on the witness stand, and the two statements corroborated each other. Wilt's statement to Fox was that appellant had played the amount of the due bill, $46,700, on the wheel. Appellant testified that he surrendered the due bill for chips amounting to $46,700, and played the amount off on the wheel, and that he did that in the presence of Fox, and with the latter's consent. The difficulty with appellant's case is that the jury did not believe his statement, and came to the conclusion that his claim and that of Wilt's, as to his playing the money off at the wheel, were false, and were made merely as a pretense to Fox and an excuse for the loss of the money and the retention of the $20,000 which he had produced and exhibited to show his good faith in giving the check for the original stake. In any view of the case, therefore, this exception presents no ground for reversal.

Appellant sought to quash the indictment because counsel employed specially to assist the prosecuting attorney was in the grand jury room when witnesses were examined.

The testimony heard on the motion discloses the fact that Mr. Martin, the attorney employed by Fox to assist in the prosecution, was in the grand jury room, and conducted the examination of witnesses, and that either the prosecuting attorney, or his deputy, was present in the room during a part, if not all, the time. Mr. Martin was present in the grand jury room, and conducted the examination at the request of the prosecuting attorney. The attorney was not present, however, when the grand jury was deliberating or voting on the charge.

This, we think, brings the question within the rule announced by this court in *Bennett* v. *State,* 62 Ark. 516, and *Tiner* v. *State,* 109 Ark. 138, where we held that "the presence in the grand jury room of an attorney employed by the State to assist the prosecution," was not ground for quashing the indictment. We also held, in *Richards* v. *State,* 108 Ark. 89, that the presence of a stenographer in the grand jury room at the request of

the prosecuting attorney would not vitiate the pro-
ceedings.

The only distinction between the present case and
the preceding ones is that the prosecuting attorney, or
his deputy, was present in the grand jury room with the
special counsel in this case, but not in the preceding
cases. Those cases establish the rule that if the special
counsel is in the room at the request of the prosecuting
attorney, and for the purpose of assisting in the prosecu-
tion, it does not vitiate the proceedings. We do not think
that the rule is altered by the fact that the prosecuting
attorney himself, or his deputy, also present. The
rule established by the cases is that it does not offend
against the statute for the prosecuting attorney to have
a stenographer or attorney in the grand jury room to
assist him at such times as the statute permits him to be
there himself. So, it is unimportant whether the prose-
cuting attorney is himself present or not if the purpose
of the presence of another party is such as does no vio-
lence to the spirit and meaning of the statute.

Appellant asked the postponement of the cause to
enable him to take depositions of witnesses in Indiana to
impeach the credibility of witness Fox, the injured party,
or to give time to bring witnesses from Indiana for that
purpose.

The depositions of witnesses for the purpose of im-
peaching Fox had been taken in another case against one
Spear, and the contention of counsel for appellant in this
case is that, either by agreement of counsel or an order
of court at a previous term, those depositions were to be
read in appellant's case. The record of the court does
not show any order for the taking of depositions in this
case, or that the depositions in the Spear case were to be
used in this. The court heard testimony on this issue as
to what the former order of the court was, and found
that no such order had been made. There is much testi-
mony to the effect that appellant's counsel, at the time
the order at the preceding term was made, thought that
it was to include depositions in this case, and that the

depositions taken were to be used in this case. But the order of court does not read to that effect, and, according to the preponderance of the evidence, there was no agreement of counsel covering the subject, and we can not say that the court abused its discretion in refusing to postpone the trial.

Another assignment of error is that the clerk of the court violated the terms of the statute in opening the additional jury list out of the presence of the court.

The statute governing the formation of juries, after providing for the selection by jury commissioners of the regular panels of the grand jury and petit jury, contains a further provision for the selection, at the discretion of the court, of a list of names to be used, in lieu of summoned bystanders, after the regular panel has been exhausted. The two sections of the Digest read as follows:

"The circuit courts shall have power, if they deem the same advisable, to direct the jury commissioners in addition to the regular panel, to provide a list of names not less than twenty-five, for the use of said court in all cases when the regular panel may have been exhausted in empaneling any jury, said list to be drawn in lieu of summoning bystanders.

"Said list so returned as provided in the foregoing section shall be placed in a separate box, each name having been written on a separate slip of paper, and said box shall be securely locked or sealed, and shall not be opened except under direction of, and in presence of, the court. Whenever the regular panel shall be exhausted as provided in the foregoing section, the court, instead of summoning bystanders, shall direct the clerk to draw from said box a sufficient number of names to complete the jury being empaneled, and shall hand the same to the sheriff, who shall forthwith proceed to summon said parties for service on said jury. Provided, if said list so drawn from said box shall be exhausted, the court shall order the sheriff to summon bystanders as provided by law." Sections 4510 and 4511, Kirby's Digest.

It appears in this case that such a list had been se-

lected and kept by the clerk, and had been opened in the trial of the Spear case. The statute provides only that when the list is opened it shall be done in the presence of the court, and there is no provision that after part of the list is exhausted, the remaining part shall be again sealed or locked. Moreover, it will be seen that, according to the terms of the statute, this provision is exercised at the discretion of the court, and an accused has no right to a trial before a jury selected in this manner. If no such list had been provided, or, if the list had not been kept in accordance with the terms of the statute, the jury could have been completed by summoning bystanders after exhausting the regular panel, and the fact that a list was used which had not been properly kept would not vitiate the proceedings.

The remaining assignment of error is that the court erred in permitting the argument of the case to be closed by the attorney employed in the case instead of by the prosecuting attorney. It is insisted that the statute (Kirby's Digest, § 2388) requires the prosecuting attorney himself to make the closing argument.

We do not so construe the statute, for it merely prescribes the order of the argument, and not the particular attorney who shall close. The purpose of the statute is to require the attorney for the party having the burden of proof to open and close the argument. There is nothing in it that requires the prosecuting attorney, when assisted by other counsel, to make the closing argument himself.

The record in this case is, in our opinion, free from prejudicial error, and the judgment is therefore affirmed.