## MARTIN *v.* STATE.

Opinion delivered February 10, 1930.

*Cravens & Cravens,* for appellant.

*Hal L. Norwood,* Attorney General, and *Robert F. Smith,* Assistant, for appellee.

BUTLER, J. The appellant was indicted for grand larceny in the usual form, the specific charge being that he did unlawfully and feloniously take, steal and carry away $1,600 in gold, silver and paper money of the value of $1,600, the property of Fay Sloan. There was a trial which resulted in a verdict of guilty. Judgment was rendered in accordance with the verdict, from which judgment is this appeal.

The appellant assigns as error, first, that the evidence was insufficient to support the verdict, and that the trial court erred in giving instructions Nos. 1 and 2 at the instance of the appellee, and for refusal to give instruction No. 2 requested by the appellant. The testimony in this case is very confused, whether because the prosecuting witness, Sloan, was intoxicated at the time of the happening of the events, the circumstances of which he attempted to describe, or because of his unwillingness to fully and frankly narrate all the facts, we are unable to say. However, from his testimony and that of the other witnesses it is reasonably certain that

$1,600 was obtained from him either by stealth or by trick or device. It appears that one Russell Cooper approached Sloan with the proposition that they would engage in a game of poker with an alleged millionaire oil man from Tulsa, Oklahoma, and by some means cheat him out of his money. The plan was that Cooper and the appellant, Martin, and Ray Sloan, the prosecuting witness, were to win the money from the supposed millionaire, Woodward, in the poker game. It developed later that Woodward was a confederate of Martin and Cooper, while Sloan was the real victim. He was induced to obtain from his wife $1,700, and with this, while intoxicated, engaged in the game with the parties named in a hotel room. In order to induce Mrs. Sloan to let her husband have the money, Martin left a Chrysler sedan in her possession as security and gave her a key, which later turned out not to be a key to the ignition, but to the door of the car. Mrs. Sloan was to wait in front of the hotel in the car. At and during the game, Sloan deposited his money with Martin who was the stakeholder. The confederates would indicate to each other by signs the manner of their play, the effect of which was that Sloan consistently lost. There was evidence tending to prove that Sloan had given to Martin as stake-holder some six or seven hundred dollars, and kept about that much in his trouser pocket. After a time an altercation occurred and Sloan attempted to repossess himself of the money he had lost, and in the confusion which followed he either left, or was ejected from the room, and he then discovered that he had only $100 left. Mrs. Sloan had left the sedan, and had come into the room where the play was going on, and, when the altercation occurred, Martin left the room, broke the glass out of the door to the sedan, entered it and drove away.

Cooper, Martin and Woodward were jointly indicted for the larceny of the $1,600. On the trial of the case the court gave instruction No. 1 to the jury, as follows:

"If you find from the evidence in this case beyond a reasonable doubt that the defendant Charlie Martin, in the Fort Smith District of Sebastian County, and within three years next before the filing of this indictment, gold, silver and paper money of the United States of the value of more than $10, the property of Ray Sloan, unlawfully and feloniously did steal, take and carry away, or, if you find from the evidence beyond a reasonable doubt that this defendant, within that time, and in the county, district and State aforesaid, was present when another person unlawfully and feloniously did steal, take and carry away, gold, silver and paper money of the United States of the value of more than ten dollars, the property of Ray Sloan, and that this defendant aided, abetted, assisted and encouraged another person to steal, take and carry away the said money, as aforesaid, then you should convict the defendant; otherwise, you should acquit him."

To this instruction the defendant made a general objection, and now urges that the instruction was erroneous in that it failed to state that the money was taken without the consent of Ray Sloan. We do not think that the instruction was erroneous, for the expression, "feloniously did steal, take and carry away," necessarily negatives the consent of the owner, especially when the instruction is read in connection with the instruction No. 3 as follows: "You are instructed that if you find from the evidence that the witness, Ray Sloan, bet money on a game of cards, intending at the time to part with the title and possession of the money, then the taking of the money, if you believe it was taken, regardless of how fraudulent, would not constitute larceny, and you should acquit this defendant." This instruction in effect told the jury that if Sloan voluntarily parted with the money intending to part with the title, then the taking of the same would not be larceny; and therefore the taking, if with his consent under those conditions, would not constitute the offense charged.

The second instruction given by the court, the giving of which is assigned as error, we think is a correct declaration of law and proper under the indictment, for it is never necessary to allege descriptive means by which the offense was committed. It might have been committed by any one of a number of ways. The instruction is as follows: "You are instructed that if you believe from the evidence in this case beyond a reasonable doubt that the defendant, Charlie Martin, obtained possession of the money mentioned in the indictment, of the value of more than ten dollars, and that the possession of said money was obtained by trick or device, with the unlawful and felonious intent, at the time, to steal, take and carry away, and to convert the said money to his own use, and that you further find that at the time said Sloan parted merely with the possession of the money and not with the title of said money, then you should convict this defendant of larceny unless precluded from doing so by other instructions in this case."

In the case of *Coon* v. *State*, 109 Ark. 346, 160 S. W. 226, cited by appellee, under an indictment like the one in the instant case, this court held that where several persons conspire to cheat a man under color of a bet, and he merely deposits his money as a stake with one of them, not meaning thereby to part with the ownership therein, the persons taking the money are guilty of larceny. The proofs of such facts were properly admitted.

The third assignment of error is that the court erred in refusing to give instruction No. 2 requested by the appellant, as follows: "If you believe from the evidence in this case that Mrs. Ray Sloan had possession, custody, or owned this money, and went to the bank and got the same and turned it over to Ray Sloan and Charlie Martin, anything that either one of them did with the money thereafter would not constitute larceny on their part." Since the court had instructed the jury in instruction No. 1 for the appellant that the allegation of ownership was material and must be proved by evidence beyond a

reasonable doubt, and that it was sufficient to allege ownership of the money in the person in whose possession the money was at the time of the alleged larceny, we think that the refusal to grant instruction No. 2, *supra,* was not error.

The most serious question in this case is the sufficiency of the evidence to support the verdict, but, viewing it in the light most favorable to the appellee and giving it its strongest probative value, we think there was substantial evidence to warrant the jury in its verdict.

The judgment is therefore affirmed.