Vedell DICKSON Jr. *v.* STATE of Arkansas

CR 73-1                                   492 S.W. 2d 895

Opinion delivered April 16, 1973

*Irvin P. Andrews* and *George Howard Jr.,* for appellant.

*Jim Guy Tucker,* Atty. Gen., by: *O. H. Hargraves,* Asst. Atty. Gen., for appellee.

George Rose Smith, Justice. The appellant was charged by information with having committed an assault upon Marie Robinson, Betty Davis, and Phyliss Haynes, "as employees of Simmons First National Bank," with the felonious intent to rob those persons. Ark. Stat. Ann. § 41-609 (Repl. 1964). Dickson appeals from a verdict and judgment finding him guilty and sentencing him to imprisonment for one year.

The State proved that Dickson and a confederate, Felton Adams, planned to rob a branch bank at a shopping center in Pine Bluff. Dickson contends, however, that the plan was not actually carried far enough to constitute an assault with the intent to rob. (See Ark. Stat. Ann. § 41-1201.) That contention must be sustained.

Only two eyewitnesses to the attempted robbery testified. Felton Adams testified that on July 8, 1971, he and Dickson drove to the shopping center in Dickson's car, with the intention of robbing the bank. Dickson was to wait in the car while Adams held up the bank employees.

The bank was not yet open when Adams reached it at about 8:00 a.m. Wearing a mask and gloves and armed with a pistol, Adams concealed himself behind a hedge to await the opening of the bank. When the three tellers arrived they saw Adams and made an outcry. At that point, Adams, in his own words: "Jumped up, shot, and ran." The shot was aimed upward and struck the roof of the bank. Adams ran back to Dickson's car, apparently firing two shots as he ran, and the two men drove away.

Marie Robinson, who alone among the three tellers was called as a witness, gave substantially the same version of the occurrence as Adams had given. Miss Robinson had waited in her car for the other two tellers to arrive. The three then walked toward the bank together. They paused to examine the hedge or shrubbery, which had turned yellow and seemed to be dying. One or both of the others saw Adams and yelled that it was a holdup. Adams jumped up, and for an instant he and Miss Robinson confronted each other. Adams shot the pistol up in the air. According to Miss Robinson: "I then ran, and as I was running I was looking behind me, and he then fired two more shots. They were wild. They weren't necessarily aimed at me, but they were toward my direction." Adams ran toward a parking lot in the shopping center.

The only conclusion to be drawn from the proof is that, although Dickson and Adams meant to rob the bank, Adams abandoned the plan and ran away when he was discovered in hiding before the bank had opened. There was no demand for money or any other conduct on Adams' part amounting to an assault upon the three women with the intention of robbing them. The judgment must therefore be reversed and the cause remanded for further proceedings.

Two of the appellant's other points for reversal must

be mentioned, for they may arise upon a retrial. The State was allowed to introduce a glove, two pistols, and other articles found in the course of a search of Dickson's home. The only objection in the court below—an objection not renewed on appeal—had to do with the validity of the officers' search warrant. It is now argued for the first time that some of the articles were not shown to be connected with the offense. Of course upon a new trial the burden will be on the State to show that its proof is competent and relevant.

We find no merit in appellant's insistence that a police officer should not have been permitted to quote statements made by the appellant before he was given a *Miranda* warning. Immediately after the occurrence the police received a description of the getaway car, which had a Colorado license plate. Officer Beatty discovered a car fitting the description and went to Dickson's apartment to inquire about it. He testified that he asked Dickson if he owned the car. Dickson said he did. Beatty then asked if Dickson had been anywhere that morning in the car. Dickson said he had not. Beatty also asked if Dickson had lent the car to anyone. Dickson said that he had not. Officer Beatty testified that the hood of the car was still warm when he checked it.

Officer Beatty's testimony was admissible. When the officer went to Dickson's apartment his purpose was to investigate rather than to accuse. Dickson was not yet in custody. As we said in *Stout v. State,* 244 Ark. 676, 426 S.W. 2d 800 (1968): "The officers' investigation had not reached an accusatory stage. *Miranda* warnings are required when the investigation reaches custodial interrogation of a suspect." That point had not yet been reached in the case at bar.

Reversed.

HARRIS, C.J., and FOGLEMAN, J., dissent.

JOHN A. FOGLEMAN, Justice. dissenting. I respectfully dissent because I do not believe that the court can say that the only conclusion a reasonable mind might reach under the evidence is that Adams abandoned the

plan to rob the tellers at the bank. I think that a reasonable inference could be drawn that Adams arose from his hiding place, confronted the teller and drew his pistol as an overt act in perpetrating the robbery. Thus, there would be a jury question whether an overt act had been committed. That being the case, I would affirm the judgment of the lower court. The confederate's testimony that he was in shock was certainly not binding on the jury as to whether he had abandoned his intent or on the question whether he committed an overt act with the intent to effectuate the plan.

I am authorized to state that the Chief Justice joins in this dissent.