Jimmy Ray PARKER *v.* STATE of Arkansas

CR 75-97 . 529 S.W. 2d 860

Opinion delivered November 17, 1975
[Rehearing denied December 22, 1975.]

*Don Langston,* Public Defender, for appellant.

*Jim Guy Tucker,* Atty. Gen., by: *Walter W. Nixon, III,* Asst. Atty. Gen., for appellee.

JOHN A. FOGLEMAN, Justice. Jimmy Ray Parker was found guilty of robbery of Mrs. Walter Kliner in the taking of her purse containing her checkbook, food stamps, credit cards and money on December 17, 1974. He was charged jointly with Mikel Edward Parker and Terry Eugene Caldwell. He was also found to have been convicted of a felony on at least one previous occasion and sentenced for ten years.

Parker's motion to suppress any oral statements made by him to the police was denied. The "purse snatching" was reported to the Fort Smith Police Department. The victim described a "purse snatcher" to Patrolman Frank Hartman. The manager of a Ben Franklin store, who came to the aid of Mrs. Kliner when he heard her cries, told the officer that he pursued the person who had taken Mrs. Kliner's purse and saw him get into a green Dodge automobile bearing license No. BWZ 051. Mike Jordan, a Salvation Army representative, stated that there were two other persons in the vehicle. The police ascertained that this license was registered to a man named Caldwell in Charleston. Mrs. Kliner told the of-

ficer that her assailant took the purse, her personalized checkbook, her credit cards and identification, but said that her billfold dropped out of the purse as he fled. The information about the vehicle was given to the State Police. When Officer Hartman was advised that the State Police Trooper Acoach had seen the vehicle at the Suburban Liquor Store, he proceeded there, arriving at about the same time as Officer Sweeten. They found there a green Dodge Coronet bearing the license number reported to the police and saw Parker, his brother Mikel and Caldwell in Acoach's vehicle.

Acoach had known Caldwell. He saw the vehicle parked at the liquor store and stopped there and arrested Caldwell and Mikel Parker, whom he found sitting inside the Caldwell vehicle. After searching and handcuffing them he placed them in his police vehicle and went into the liquor store where he found the proprietor and Jimmy Parker. He asked Jimmy if he had been in the Caldwell vehicle. Upon receiving an affirmative reply, Acoach arrested, handcuffed, and searched Jimmy Parker. Appellant had not been advised of his constitutional rights by the officer. The answer given by appellant to Acoach was the only statement involved.

Appellant contends that this statement should have been suppressed, arguing that it was custodial interrogation because the investigation had focused on him. We do not agree. The information furnished the police was that three persons had been in the vehicle in which the "purse snatcher" fled the scene. When the police officer found two persons in the vehicle which fit the description furnished him, it was natural and proper for him to inquire in the vicinity for a third person. When he went into the liquor store, he may well have intended to ask the proprietor what other persons he had seen in the vicinity. When appellant was found there the inquiry made of him was a natural part of the officer's investigation and there is no indication that appellant's freedom had been interfered with in any way before he answered.

Police inquiry is purely investigatory and proper until the suspect is restrained in some way. *Miranda* v. *Arizona*, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694, 10 ALR 3d 974

(1965). The warnings mandated by *Miranda* are not required where the person interrogated has not been arrested or deprived of his freedom in any significant way. *Patrick* v. *State*, 245 Ark. 923, 436 S.W. 2d 275; *Johnson* v. *State*, 252 Ark. 1113, 482 S.W. 2d 600. The statement in this case readily falls within the class in which we held oral statements to police officers admissible in *Stout* v. *State*, 244 Ark. 676, 426 S.W. 2d 800; *Chenault* v. *State*, 253 Ark. 144, 484 S.W. 2d 887 and in *Johnson* v. *State*, supra. In *Stout*, we held that affirmative answers to the questions of a police officer who arrived soon after a shooting in response to a call by the accused as to the whereabouts of the weapon used and whether the gun produced was the one used were admissible, in spite of the fact that no warnings had been given, because the investigation had not reached the accusatory state, even though the accused was arrested immediately after answering the questions. In *Johnson*, a police detective, who had gone to a hospital to see the victim of a "shootout" and who interrogated the accused there in making his investigation of a reported gunshot wound for which the accused was receiving treatment, was permitted to testify that, in response to his questions, the accused identified himself by an incorrect name and gave an account of his activities that proved to be untrue, even though one of the purposes of the interrogation was to see whether or not he was involved in the "shoot-out". No warnings were given the accused. We said that the officer would have been derelict in his duty if he had not asked the questions he did. In *Chenault*, the police officers found the body of a murder victim in the front room of his home and the accused, his wife, standing by the kitchen wall with a gun it her hand. When an officer asked her for the gun she handed it over, saying that she had shot the victim. When asked who the victim was, she replied that he was her husband. Even after this, and without any warnings having been given, the officer asked her what happened and she responded, "I shot him. I killed him." Only after this answer was she warned not to say any more. These utterances, without others were held admissible as spontaneous utterances.

The inquiry here was quite similar to that in *Dickson* v. *State*, 254 Ark. 250, 492 S.W. 2d 895, where we found the answers given admissible. We find no error in the admission

of appellant's answer to the inquiry made by the police officer.

Appellant next contends that his motion for directed verdict should have been granted because the statement he made to Officer Acoach should have been suppressed and because there was no identification testimony to support the verdict. This contention actually turns upon the disposition of appellant's first argument and must fall with it.

Another of appellant's points for reversal is his contention that, since he was charged as a principal, the circuit judge erred in giving a jury instruction defining accessories and advising that an accessory could be punished as a principal. The instruction is a proper statement of the law and was properly given. Appellant argues that the abolishment of the distinction between principals and accessories makes the instruction erroneous. To the contrary, this is the only means of making known to the jury that aiders, abetters and advisers in the commision of a crime are principals and punishable as such. *Roberts* v. *State,* 254 Ark. 39, 491 S.W. 2d 390. See *Fleeman* v. *State,* 204 Ark. 772, 165 S.W. 2d 62. Appellant's reliance upon *Simmons* v. *State,* 184 Ark. 373, 42 S.W. 2d 549 is misplaced. In the first place, the instruction there was requested by the defendant, but we held it abstract under the facts of that case, because the defendant in that case was either a principal or innocent. In the second place, the case was decided before the distinction between principals and accessories was abolished. See § 25, Initiated Act 3 of 1936; Ark. Stat. Ann. § 41-118 (Repl. 1964).

We do not agree with appellant that the trial court erred in refusing to give instructions defining grand larceny and petit larceny as lesser offenses included in the charge of robbery. The evidence here shows that whoever took Mrs. Kliner's purse, took it by force sufficient to constitute robbery. She said that when someone attempted to grab her purse she "put up a fight," the robber hit her in the face and the purse was simultaneously "yanked" from her with force sufficient to break her purse strap, so that after the purse was taken she stll held the strap in her hand. She said she was knocked down with such force that she thought she must have

blacked out momentarily and was assisted to her feet by a Salvation Army member. She said that she suffered two abrasions and three bruises on her face. Officer Hartman interviewed Mrs. Kliner after the incident was reported. Although he saw no marks on her face at the time, he said that she had "a red flushed look about her face and cheeks." Detective Earl Sharp interviewed Mrs. Kliner on the next day. She exhibited a scratch and a bruise on her right cheek.

It is quite true that the mere snatching of money or goods from the hand of another is not robbery, unless some injury is done to the person or there be some struggle for possession of the property prior to the actual taking or some force used in order to take it. *Routt v. State,* 61 Ark. 594, 34 S.W. 262. See also *Coon v. State,* 109 Ark. 346, 160 S.W. 226. The evidence was certainly sufficient to sustain a conviction of robbery. *Lloyd v. State,* 253 Ark. 839, 489 S.W. 2d 240.

It is error to refuse to give a requested instruction defining a lesser included offense when there is testimony on which the defendant might be found guilty of the lesser, rather than the greater, offense. *Caton v. State,* 252 Ark. 420, 479 S.W. 2d 537. It would not have been error to have given an instruction on larceny. But it is not error to refuse such an instruction when the evidence clearly shows that the defendant is either guilty of the greater charge or innocent. *Caton v. State,* supra. In this case, there seems to be little reason for doubting that there was a struggle for possession of the purse before the taking was accomplished and that Mrs. Kliner was struck in the face, however slightly. She did retain the purse strap in her hand after the assailant had taken the purse. Even though the abrasions on her face did not immediately appear, her face appeared to the police officer who came to the scene to be red and flushed and it is certainly commonly known that a bruise does not appear immediately after a blow and surface scratches may appear at first only as inflammations. We find no error here.

Appellant's remaining point for reversal questions the propriety of proving his prior convictions. The evidence offered was in the form of commitments to the penitentiary, which appellant describes as "transcripts of the judgment."

Appellant argues that this evidence was inadmissible because strict construction of the statute only permits introduction of a duly ceritified copy of the judgment of conviction. It is true that the statute is penal and to be strictly construed. *Higgins v. State*, 235 Ark. 153, 357 S.W. 2d 499. But there is nothing in the statute which prevents proof of prior convictions by admissible evidence other than the two items of documentary evidence mentioned in Ark. Stat. Ann. § 43-2330 (Repl. 1964). That section provides only that when either of these items of evidence is introduced, it constitutes prima facie evidence. This section of the statute makes a duly certified copy of the record of a former conviction and judgment of a court of record for imprisonment in the penitentiary against the person indicated prima facie evidence of the conviction. The commitments admitted into evidence are certified by the clerks of the respective courts as "transcripts of the judgment and sentence of said court in the cause therein mentioned." The identity of the court and case appear as a caption at the very beginning of each of the instruments. A reading of the instruments indicates that they are actually literal recitations of the judgments in the respective cases. Each concludes with an order of the court that its clerk make out and deliver a certified copy of the judgment as authority for the agent or keeper of the penitentiary or the Department of Correction to receive and confine the defendant Jimmy Ray Parker. There was no error in the admission of these documents in evidence.

The judgment is affirmed.

ROY, J., not participating.