No. 84–49. SWEAT ET AL. *v.* ARKANSAS. Ct. App. Ark. Certiorari denied. 

JUSTICE BRENNAN, with whom JUSTICE MARSHALL joins, dissenting.

After the State of Arkansas had initiated formal criminal proceedings against the petitioners Russell and Richard ("Bud") Sweat, a state undercover agent contacted the Sweats and, in a series of telephone conversations and face-to-face meetings, deliberately elicited incriminating statements from them. Because the Sweats' right to counsel had accrued when formal criminal proceedings were begun, the prosecution's introduction at trial of these subsequent statements clearly violated the Sixth and Fourteenth Amendments. See, *e. g., United States* v. *Henry,* 447

---

U. S. 264 (1980); *Brewer* v. *Williams*, 430 U. S. 387 (1977); *Massiah* v. *United States*, 377 U. S. 201 (1964). The Arkansas Court of Appeals held, however, that the Sweats' right to counsel had not yet attached at the time the undercover agent elicited their statements on the ground that, since they had not "been arrested or deprived of [their] freedom in any significant way," they were not entitled to notification of their rights pursuant to *Miranda* v. *Arizona*, 384 U. S. 436 (1966). 5 Ark. App. 284, 288, 635 S. W. 2d 296, 299 (1982), subsequent appeal, 11 Ark. App. xix (1984).

This reasoning is clearly erroneous. We have made clear time and again that *Miranda* and concepts of "custody" have nothing to do with the accrual of a defendant's Sixth and Fourteenth Amendment right to counsel. See, *e. g.*, *United States* v. *Henry, supra,* at 273, n. 11; *Massiah* v. *United States, supra,* at 206. Accordingly, I respectfully dissent from the Court's failure to correct a state court's clear disregard of controlling federal constitutional precedent.

I

During an undercover investigation in Blytheville, Arkansas, Sergeant John Chappelle of the Arkansas State Police Criminal Investigation Division learned that Bud Sweat and his son, Russell, might be engaged in marihuana trafficking. Chappelle had an unwitting intermediary introduce him to the Sweats, and he proposed to sell them several hundred pounds of marihuana. Chappelle and the Sweats had several meetings and telephone conversations from early February through late March 1980, and they ultimately agreed that Chappelle would deliver 500 pounds of marihuana to Blytheville in exchange for $150,000. Chappelle surreptitiously taped these meetings and conversations.

When he felt that he had obtained enough evidence to prosecute the Sweats, Chappelle met on March 27 with David Burnett, Prosecuting Attorney for the Second Judicial District of the State of Arkansas. Burnett reviewed the evidence with Chappelle and decided to file a felony information against the Sweats charging them with criminal conspiracy in violation of Ark. Stat. Ann. § 41–707 (1977).[1] Chappelle was present while Burnett prepared

---

[1] The felony information charged that the Sweats "did unlawfully and feloniously commit the offense of criminal conspiracy with the purpose of promoting

and signed the felony information. Record of First Trial in CR–80–63 and CR–80–63A (Cir. Ct., Crim. Div., Chickasawba Dist. of Miss. Cty., Ark.), p. 591 (hereinafter First Trial Record). Adversary judicial criminal proceedings were formally begun at 4:30 that afternoon when Burnett filed the felony information in the Circuit Court for the Chickasawba District of Mississippi County and obtained bench warrants for the Sweats' arrest. Second Trial Record 4–6.[2]

Instead of arresting the Sweats, however, Chappelle decided that he would like to elicit additional incriminating evidence from them. Accordingly, he called them on the telephone that evening and urged them to continue with the deal. First Trial Record 388–389. In subsequent calls and meetings which followed from his initiation, Chappelle probed the Sweats for details about their financial resources, their plans for the marihuana, and their knowledge of each others' activities. See generally *id.*, at 390–426. When the Sweats informed Chappelle that they could not proceed with the purchase, he outlined an alternative "recommendation" for the delivery of "good faith" money and pressed them to "let's get something going." *Id.*, at 402, 407.[3] Only

_____

or facilitating the commission of the criminal offense of sale and delivery or possession with intent to sell or deliver a controlled substance, to wit: marijuana . . . ." Record of Second Trial in CR–80–63 and CR–80–63A (Cir. Ct., Crim. Div., Chickasawba Dist. of Miss. Cty., Ark.), p. 4 (hereinafter Second Trial Record).

[2] The warrants directed the authorities: "You are commanded forthwith to arrest [Russell and Bud Sweat] and bring [them] before the Mississippi County Circuit Court, Chickasawba District, to answer an indictment in that Court against [them] for the offense of Criminal Conspiracy . . . or if the Court be adjourned for the Term, that you deliver [them] to the Jailer of Mississippi County." *Id.*, at 5–6.

[3] Specifically, Chappelle instructed Bud Sweat: "You go down to the office and you find, you gather up all you can gather and you call me back and you let me know how much. I ain't leaving here without something, understand? . . . We can do each other a lot of good. . . . But, go get me what you can as a measure of good faith and I'll take Russell's word on it and in turn I'll take your word on it. But, listen, don't jack me around, all right, cause I'm not going to do you all—." First Trial Record 400–402. In a later telephone conversation with Russell, Chappelle reiterated: "Russell, listen, I don't want to—I don't want to leave here without something. . . . Now, let's get something going. . . . I made a recommendation that your dad seemed to like and I'm sitting here waiting on an answer to that." *Id.*, at 406–409.

after Chappelle had succeeded in eliciting these further statements from the Sweats and in persuading them to give him what little money they could gather did he choose to execute the bench warrants. *Id.*, at 422–426.

Chappelle surreptitiously taped all of these telephone conversations and meetings, and the State sought to introduce the recordings at trial as evidence of the Sweats' statements and overt acts in furtherance of the charged conspiracy.[4] The Sweats moved to suppress the recordings of and testimony pertaining to these statements, relying on *Massiah* v. *United States*, 377 U. S. 201 (1964), in support of their argument that Chappelle's deliberate elicitation of these statements after the felony information had been filed violated the Sixth and Fourteenth Amendments. Second Trial Record 35–40. The trial court, however, admitted the evidence on the ground that *Massiah* had been "further elaborated and explained" by *Miranda* v. *Arizona, supra*, so that the Sixth Amendment right to counsel is now implicated only when a defendant is actually in custody. First Trial Record 57. On appeal, the Arkansas Court of Appeals agreed with this reasoning:

> "[W]e note that one is not entitled to notification of his rights when the person has not been arrested or deprived of his freedom in any significant way. *Miranda* v. *Arizona*, 384 U. S. 436 (1966); *Parker* v. *State*, 258 Ark. 880, 529 S. W. 2d 860 (1975). Since no interrogation of appellants took place and they were not coerced or tricked into saying anything against their will, it was not error for the trial judge to refuse to suppress appellants' statements. See *Hoffa* v. *United States*, 385 U. S. 293 (1966)." 5 Ark. App., at 288, 635 S. W. 2d, at 299.

The Court of Appeals reversed the Sweats' convictions on other grounds, however, and remanded for a new trial.[5] Over renewed

---

[4] The State also amended its felony information to include as substantiating details the statements and actions elicited by Chappelle after the filing of the original information. See Second Trial Record 16–17.

[5] The Sweats had argued at trial that Chappelle entrapped them, and they unsuccessfully had sought to introduce recordings of Chappelle's conversations with an informant in support of this defense. Finding that some of Chappelle's recorded statements were material to the entrapment issue, the

objection, Chappelle once again testified about his conversations with the Sweats subsequent to the initiation of formal proceedings and once again played the challenged recordings for the jury. Second Trial Record 260–286. The Sweats again were convicted of criminal conspiracy, and once again the Arkansas Court of Appeals rejected their Sixth and Fourteenth Amendment claim for the reasons stated in its earlier opinion. 11 Ark. App. xix (1984). The Arkansas Supreme Court denied the motion to review.

## II

The Sixth Amendment, applied to the States through the Fourteenth Amendment, guarantees that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defense." This right to counsel accrues when "adversary judicial criminal proceedings" are initiated—"whether by way of formal charge, preliminary hearing, indictment, *information*, or arraignment." *Kirby* v. *Illinois*, 406 U. S. 682, 689 (1972) (emphasis added). Thereafter, the authorities may not deliberately elicit incriminating statements from the defendant absent the presence of his counsel or a knowing and voluntary waiver of his right to counsel. This prohibition applies both to express interrogation, see, *e. g.*, *Brewer* v. *Williams*, 430 U. S., at 398–401, and to surreptitious efforts by the authorities deliberately to elicit incriminating information, see, *e. g.*, *United States* v. *Henry*, 447 U. S., at 269–275 (use of jailhouse informant to elicit admissions from incarcerated defendant); *Massiah* v. *United States, supra*, at 206–207 (use of informant to elicit admissions from defendant who was free on bail). This touchstone requirement of our constitutional scheme embodies the recognition that, once the government has "committed itself to prosecute" and the defendant thereby is "faced with the prosecutorial forces of organized society," *Kirby* v. *Illinois, supra*, at 689, any official effort to interrogate the defendant without the protections afforded by counsel "'contravenes the basic dictates of fairness in the conduct of criminal causes and the fundamental rights of persons charged with crime.'" *Massiah* v. *United States, supra*, at 205 (citation omitted). See also *Spano* v. *New York*, 360 U. S. 315, 325 (1959) (Douglas, J., concurring); *id.*, at 327 (Stewart, J., concurring).

---

Court of Appeals held that the trial court's refusal to admit this evidence was reversible error. 5 Ark. App. 284, 286–287, 635 S. W. 2d 296, 298 (1982).

Applying these principles to the circumstances of this case, it is clear that the State's introduction of the challenged recordings at trial violated the petitioners' Sixth and Fourteenth Amendment right to counsel.

*First.* Adversary judicial criminal proceedings began in this case with the filing of the felony information and the issuance of bench warrants at 4:30 p. m. on March 27. *Kirby* v. *Illinois, supra,* at 689. Although the State now attempts to minimize the fact that the felony information "evidently" had been filed before Sergeant Chappelle contacted the Sweats and elicited the challenged statements from them, Brief in Opposition 6–7, there is thus no question that at the time of these contacts the Sweats' Sixth and Fourteenth Amendment right to the assistance of counsel already had accrued.

*Second.* The State contends that Sergeant Chappelle merely "continued with the operation and allowed the Petitioners to attempt to complete the proposed deal," and that "the Petitioners were in fact arrested before there was any questioning." *Id.,* at 7. To the extent the State suggests that the Sixth and Fourteenth Amendments were implicated only by the "formal" questioning that occurred after the Sweats' arrest, we have repeatedly rejected such arguments. The right to counsel must "'apply to indirect and surreptitious interrogations as well as those conducted in the jailhouse.'" *Massiah* v. *United States, supra,* at 206 (citation omitted). See also *United States* v. *Henry, supra,* at 272–273. The relevant inquiry has been stated variously as whether the authorities "deliberately elicited" incriminating statements from the defendant, *Massiah* v. *United States, supra,* at 206; or "deliberately and designedly set out to elicit information" from the defendant, *Brewer* v. *Williams, supra,* at 399; or "intentionally creat[ed] a situation likely to induce [the defendant] to make incriminating statements," *United States* v. *Henry, supra,* at 274.

There has occasionally been disagreement as to the precise formulation of the relevant standard and its application to the sometimes-ambiguous facts in cases before us. See, *e. g., United States* v. *Henry, supra,* at 275 (POWELL, J., concurring); *id.,* at 277 (BLACKMUN, J., dissenting). Under even the most lenient application of the standard, however, there can be no question from the unambiguous facts of *this* case that Sergeant Chappelle "intentionally," "deliberately," and "designedly" elicited devastat-

ing admissions from the Sweats after formal judicial proceedings had begun. See *supra*, at 1174–1175, and n. 3. The Arkansas Court of Appeals itself conceded that the Sweats' statements had been "elicited" by Chappelle. 5 Ark. App., at 288, 635 S. W. 2d, at 299.

*Third.* The State contends, however, that it is constitutionally significant that the Sweats had not yet "retained counsel or requested the assistance of counsel" when Chappelle elicited their admissions. Brief in Opposition 7. Although *Massiah* and *Williams* both involved situations in which the defendant had indeed already obtained the assistance of counsel, that factor was irrelevant to the outcome. "[T]he right to counsel . . . means at least that a person is *entitled to* the help of a lawyer at or after the time that judicial proceedings have been initiated against him . . . ." *Brewer* v. *Williams, supra,* at 398 (emphasis added). Thus we have specifically applied *Massiah* to cases in which the defendant was under indictment but where he was not represented by, nor had he even requested, counsel. See, *e. g., McLeod* v. *Ohio,* 381 U. S. 356 (1965) *(per curiam),* summarily rev'g 1 Ohio St. 2d 60, 203 N. E. 2d 349 (1964). Cf. *Edwards* v. *Arizona,* 451 U. S. 477, 484, n. 8 (1981) (discussing *McLeod*). And in *Henry,* the jailhouse informant was "contacted" by the Government six days *before* Henry obtained counsel. 447 U. S., at 266.

*Fourth.* The Arkansas Court of Appeals apparently believed that *Miranda* somehow modified the *Massiah* line of cases, because it viewed as dispositive the fact that, since the Sweats had not been arrested, they were not entitled to notification of their rights. 5 Ark. App., at 288, 635 S. W. 2d, at 299. The Fifth Amendment concerns embodied in *Miranda* and the Sixth Amendment right to counsel enunciated in *Massiah* are, however, obviously distinct. *Miranda* is directed at custodial interrogation and is therefore limited to those situations in which a suspect is "taken into custody or otherwise deprived of his freedom of action in any significant way." 384 U. S., at 444. The Sixth and Fourteenth Amendment right to counsel, on the other hand, accrues upon initiation of formal judicial proceedings and continues whether or not the accused is at any given time in custody—as witnessed, of course, by the fact that Massiah himself was out on bail and engaged in a conversation with a friend who, "quite without the petitioner's knowledge," had become an undercover informant. 377 U. S., at 202. Thus we have repeatedly rejected arguments of this sort which "see[k] to infuse Fifth Amendment concerns

against compelled self-incrimination into the Sixth Amendment protection of the right to the assistance of counsel." *United States* v. *Henry*, 447 U. S., at 273.

In a similar vein, the court below contended that the Sweats "were not coerced or tricked into saying anything against their will." 5 Ark. App., at 288, 635 S. W. 2d, at 299. Although the Sweats were not "coerced" in the Fifth Amendment sense, here again the court impermissibly injected Fifth Amendment concerns into the Sixth and Fourteenth Amendment domain. We have "pointedly observed" on repeated occasions that an accused in such circumstances "was *more* seriously imposed upon because he did not know that [the person asking him questions] was a Government agent," and accordingly have rejected suggestions that we "apply a less rigorous standard under the Sixth Amendment where the accused is prompted by an undisclosed undercover informant than where the accused is speaking in the hearing of persons he knows to be Government officers." *United States* v. *Henry, supra,* at 272–273 (emphasis added). See also *Massiah* v. *United States,* 377 U. S., at 206. Thus the Sweats were indeed "tricked" in the sense that "[c]onversation stimulated in such circumstances may elicit information that an accused would not intentionally reveal to persons known to be Government agents." *United States* v. *Henry, supra,* at 273.

*Finally.* The State relies heavily on *Hoffa* v. *United States,* 385 U. S. 293 (1966), as support for its argument that it was entitled to proceed with its undercover sting operation until it decided to arrest the Sweats, notwithstanding that formal judicial proceedings already had been initiated. In that case, the Government arranged for an informant to monitor Hoffa's activities while Hoffa was on trial for alleged violations of the Taft-Hartley Act, a trial that ultimately ended with a hung jury. On the basis of the informant's discoveries, Hoffa subsequently was indicted for and convicted of attempting to bribe members of the first jury. Hoffa contended that the bribery charges could have been brought long before they finally were, that if they had been timely filed the informant's continued presence would have been barred under *Massiah,* and that the Government's failure to bring charges earlier therefore violated his Sixth Amendment right to counsel. The Court rejected this argument out of hand:

> "There is no constitutional right to be arrested. . . . Law enforcement officers are under no constitutional duty to call a halt to a criminal investigation the moment they have the

minimum evidence to establish probable cause, a quantum of evidence which may fall far short of the amount necessary to support a criminal conviction." 385 U. S., at 310.

Once again the State relies on precedent that is not relevant to the issue at hand. As we have previously emphasized, *Hoffa* has no bearing in cases where, as here, formal criminal proceedings actually have been initiated and the authorities deliberately elicit incriminating statements for use in *those* proceedings. *United States* v. *Henry, supra,* at 272. Thus while *Hoffa* stands for the proposition that the Sixth Amendment does not control the *timing* of the initiation of adversarial proceedings, it is "not relevant to the inquiry under the Sixth Amendment" *once such proceedings have commenced* and the right to counsel has attached, as it clearly had here. 447 U. S., at 272.

The State correctly notes that an investigation of criminal activities need not terminate upon the initiation of formal criminal proceedings. We have previously so emphasized. *Massiah* v. *United States,* 377 U. S., at 207. All that we have previously held, and all that the Court should have held today, "is that the defendant's own incriminating statements, obtained by [state] agents under the circumstances here disclosed, could not constitutionally be used by the prosecution as evidence against *him* at his trial." *Ibid.* (emphasis in original).

### III

The press of our docket may well have led the Court to dismiss this petition for direct review as involving nothing more than an obviously aberrant failure by a state court to apply settled constitutional principles. Lest the fundamental right to counsel be blurred and then gradually eroded by the tremendous pressures put on those charged with enforcing the criminal law, however, I believe we have a duty rigorously to correct such obvious aberrations. For "it is precisely the predictability of those pressures that makes imperative a resolute loyalty to the guarantees that the Constitution extends to us all." *Brewer* v. *Williams,* 430 U. S., at 406.

Accordingly, I respectfully dissent from the Court's denial of the petition for a writ of certiorari.