Benjamin Brigham BALDWIN *v.* STATE of Arkansas

CA CR 93-1283                    892 S.W.2d 534

Court of Appeals of Arkansas
Division I
Opinion delivered February 22, 1995

*Brenda Horn Austin,* for appellant.

*Winston Bryant,* Att'y Gen., by: *Clint Miller,* Senior Asst. Att'y Gen., for appellee.

MELVIN MAYFIELD, Judge. Appellant Benjamin Brigham Baldwin was found guilty by a jury of the felonies of robbery and criminal mischief and misdemeanor criminal assault in the first degree. He was sentenced to five years for robbery and three years for criminal mischief in the Arkansas Department of Cor-

rection, to be served consecutively. The misdemeanor punishment was merged with the felony sentences. On appeal the appellant challenges the sufficiency of the evidence only as to the conviction of robbery.

At trial, Iretha Jordan testified that she works with her husband in his accounting business. Between 6:30 and 7:00 p.m. on February 19, 1993, they drove to a mall in Fayetteville, Arkansas, to eat at Luby's. Mrs. Jordan's husband has had one leg amputated and since there were no handicapped parking spaces open, Mrs. Jordan dropped her husband at the mall entrance and went to park the car. The driveways of the parking lot had been cleaned, and snow was piled up in the parking places. Mrs. Jordan said she pulled into a spot and kept trying to push into the snow bank a little further so the rear of her Cadillac would not stick out so far.

Mrs. Jordan testified that when she started to open the door on the driver's side of the car, it just opened. She described the events that followed.

> And of course that startled me and I looked around and here was this young man leaning down. . . . He didn't look bad; he looked nice. . . . And he said, "Ma'am, this is a carjacking, move over." And I was just sick; just a sick went over me because I knew what a carjacking was. . . . Well, I thought to myself — I thought, you know, "Get somebody else." You know, my husband's standing up there waiting on me. He's disabled. My mother's almost eighty years old. I take her to the doctor and to the store. I take care of her. And you just can't — I can't have this happen to me, you know. And then I realized — So then I just said, "Oh, please," and I just threw up my hands like that, "Please." . . . [H]e says, "Ma'am, I'm not gonna hurt you, I just want your car." Well, while he's saying that, I'm looking right at him saying (nodding head) — I don't answer but (nodding head) — And then he says, "But you're gonna have to move over." . . .

Mrs. Jordan explained to the jury that appellant had a long, dark duffle bag which he was holding so that it blocked her exit from the car. She said she had resolved in her mind that she was not going to move over and she was not going with the man. She began to honk the horn. She said:

And of course he just like this jumps back like this, you know, and he grabbed my hand and jerked it off the horn and then there was just a — I don't even know how to describe it as far as — as soon as he moved, I moved and we both started — he started trying to get in the car with his duffel bag and everything and I'm trying to get out. I mean, when I — when I honked the horn it stopped that and that was it, you know, and I figured he would run away. Well, I didn't really figure, but, I mean, I just thought, "Someone will hear this horn." But I just honk, honk, honk, honk. So he grabbed my arm, jerked it off the horn and then I started climbing out and he started climbing in. And, I mean, we just — somehow he got in and somehow I got out. Now, I don't know — I realize that on the — when I talked to the 9-1-1 people that I said he pulled me out of the car. And I'll just be honest, all I know is I got out and he got in and we did it at the same time.

Mrs. Johnson was then asked:

Q. Did he put any physical force on you while trying to get in there?

A. Just when he pulled my hand off the horn.

Q. And when you all were — he was attempting to get inside the car and you were attempting to get out, was there any bodily impact there?

A. Well, just us — him crawling in and me crawling out.

Q. Was his body rubbing against yours? . . .

A. Well, we just — yeah, we had to touch. . . . [I]f you've ever traded places in the car when you're driving or, you know, when you're riding along, you just kind of scoot over each other some way.

Appellant took the car and drove out of the parking lot. He subsequently lost control of the Cadillac and drove into a snow bank and ditch on the side of the road, where he was apprehended by police officers who had been following him.

Appellant testified that he had broken up with his girlfriend in Ohio and had caught a bus to Fayetteville. When he arrived

he called his father, who wouldn't talk to him. Brock Baldwin, appellant's brother, testified that because of the snow he could not get out to pick up appellant, so appellant stayed in the lobby of a hotel overnight. The next day around noon, according to appellant's brother, he and his father went to the hotel. He said he hugged appellant but his father rejected appellant. However, appellant's father did give appellant some money and they dropped him off at the Northwest Arkansas Mall, where he could stay warm.

Appellant testified that his dad gave him $30 which he drank up in a bar. He said he was extremely drunk; he did not remember using the word "carjacking" to Mrs. Jordan, but he did remember telling her he needed her car; and he also remembered her honking the horn and that she got out and he got in. Appellant denied that he bumped into Mrs. Jordan getting into the car or that he threatened her. On cross-examination appellant denied jerking Mrs. Jordan's arm off the horn or preventing her from leaving her vehicle.

Arkansas Code Annotated Section 5-12-102 (Repl. 1993) defines robbery as follows:

> (a)  A person commits robbery if, with the purpose of committing a felony or misdemeanor theft or resisting apprehension immediately thereafter, he employs or threatens to immediately employ physical force upon another.

> (b)  Robbery is a Class B felony.

Physical force is defined by Ark. Code Ann. § 5-12-101 (Repl. 1993) as "any bodily impact, restraint, or confinement or the threat thereof." Appellant asserts that at trial Mrs. Jordan testified clearly that appellant told her several times that he would not hurt her, and in a statement prior to trial she admitted that he did not touch her, hurt her or threaten her in any way. He agrees that Mrs. Jordan testified that appellant "pulled" her hand off the horn, but he contends this is inadequate bodily contact to support the robbery conviction.

Appellant cites *Thompson* v. *State*, 284 Ark. 403, 682 S.W.2d 742 (1985); *Jarrett* v. *State*, 265 Ark. 662, 580 S.W.2d 460 (1979); *Parker* v. *State*, 258 Ark. 880, 529 S.W.2d 860 (1975); and *Scott* v. *State*, 27 Ark. App. 1, 764 S.W.2d 625 (1989), as examples of

what has been held to be sufficient "bodily impact" to constitute physical force. Appellant argues that these cases show that to support a robbery conviction the State must prove "intentional" physical contact with the intent to threaten the victim or resist apprehension. He argues that here there was no intentional physical contact with Mrs. Jordan, he did not threaten or use force on her and that no harm came to her. He contends this was a case of "theft not robbery."

In *Thompson* v. *State*, appellant had been observed in a store placing four new towels in her large purse. A security guard observed this from an observation booth and went to apprehend appellant. She identified herself as a security guard and asked appellant to go with her to the security office. At that time, appellant unzipped her purse, started throwing out the towels, and began yelling, cursing, and hitting the security guard. This evidence was held to be sufficient to support a conviction for robbery. The conviction was reversed, however, on other grounds.

In *Jarrett* v. *State*, an officer was attempting to handcuff appellant when appellant broke away, tried to run, and the officer and appellant started to fight. Appellant continually tried to get away from the officer by pushing and knocking the officer away from him. The fight ended when the officer's gun accidentally discharged. The court found appellant's conduct in resisting apprehension by employing or threatening to employ physical force upon the officer to be adequate to support the conviction. 265 Ark. at 664-65, 580 S.W.2d at 461-62.

*Parker* involved a purse snatching. The victim said that when someone attempted to grab her purse she "put up a fight," the robber hit her in the face with enough force to knock her down and the purse was simultaneously "yanked" from her with force sufficient to break the purse strap. It was held that this evidence was sufficient to support the conviction for robbery. 258 Ark. at 884-85, 529 S.W.2d at 863.

In *Scott* v. *State*, a store security officer attempted to speak to appellant about a new coat he appeared to be carrying out of the store and a tie he had placed in the pocket of the coat. The appellant broke away from the security officer and swung his right arm, striking the officer with enough force to knock him down. Appellant then ran out of the store with the coat and tie,

jumped into a car and sped away. We held that, although the altercation in *Scott* was not as violent as the one in *Jarrett*, striking the officer with enough force to knock him down constituted physical force as defined by statute as "bodily impact, restraint, or confinement or the threat thereof." 27 Ark. App. at 4, 764 S.W.2d at 627.

Other cases are also revealing. In *Fairchild* v. *State*, 269 Ark. 273, 600 S.W.2d 16 (1980), appellant had been convicted of aggravated robbery. The appellate court found insufficient evidence of aggravated robbery but sufficient evidence to support a conviction of robbery. The court stated, "Although appellant first contends that there was insufficient evidence to show that he employed physical force against Mrs. Calva, we find that jerking the door from her, cornering her in the back hallway and grabbing her dress is sufficient restraint and bodily impact to constitute physical force." 269 Ark. at 275, 600 S.W.2d at 17.

In *Turner* v. *State*, 270 Ark. 969, 606 S.W.2d 762 (1980), the appellant and two other boys had blocked the path of a legally blind woman and her husband, who also had impaired vision and was crippled and using crutches, and demanded their money. When the woman took her billfold from her pocket, appellant grabbed her wrist, causing her to release her hold on the billfold, snatched her rain bonnet out of her pocket, and a second boy grabbed her husband's tobacco can from his hip pocket. The Arkansas Supreme Court held that the appellant's actions in obstructing the couple's path and seizing the woman's wrist with sufficient force to cause her to release her billfold, in light of the couple's helplessness, constituted sufficient force to accomplish its purpose and amounted to robbery. 270 Ark. at 970-71, 606 S.W.2d at 763.

We think that the "jerking" of Mrs. Jordan's hand from the horn, blocking her exit from the car with the large, long duffle bag, and the contact of their bodies as she got out of the car and he got into the car was adequate "bodily impact" to support the robbery conviction.

Affirmed.

ROBBINS and ROGERS, JJ., agree.