Calvertis JARRETT *v.* STATE of Arkansas

CR 79-22                                     580 S.W. 2d 460

Opinion delivered May 7, 1979
(In Banc)

*John W. Achor,* Public Defender, by: *James Phillips,* Deputy Public Defender, for appellant.

*Steve Clark,* Atty. Gen., by: *Alice Ann Burns,* Asst. Atty. Gen., for appellee.

GEORGE ROSE SMITH, Justice. By information Jarrett was charged with theft of property and with robbery, with three previous felony convictions. At a bench trial the court found Jarrett guilty of the two offenses and sentenced him to 30 days' confinement for the theft and to 5 years for the robbery. For reversal it is argued that the proof is insufficient to sustain a finding of guilty upon either charge.

At the time of the offenses police officer Baer, off duty, was acting as a security guard at a grocery store. From a place of concealment the officer saw Jarrett and three other men load a grocery cart with packages of meat. The other three then went toward the front of the store, but Jarrett pushed the loaded cart into a storeroom, marked Employees Only. There, within the officer's sight, Jarrett began to put the packages of meat into two large sacks that had been stuck in the back of his pants. When Jarrett saw the officer he started to run, but he stopped when the officer drew his revolver and ordered him to stop. Baer tried to handcuff Jarrett and succeeded in getting one bracelet on his left wrist. The officer's testimony then continues:

I . . . was attempting to put the other bracelet on his

right wrist when the fight started. . . . He broke and tried to run, and of course I was holding on to the one bracelet, and I've got a gun in the other hand, which means I can't grab him. We started fighting, bouncing off. There's all kinds of merchandise, boxes, there's an ice machine, a baler. We bounced off the ice machine and the baler. I tried to handcuff him to the baler, because my car was out front with two more suspects. We continued to fight, wrestle, he was continually trying to break and get away, pushed me away, knocked me away. . . . We got up closer to the baler, and of course we are still fighting and I was trying to handcuff him to it.

At that point the officer's gun went off accidentally. Both men stopped fighting, and Jarrett was handcuffed and taken into custody.

First, the proof supports the court's finding that Jarrett was guilty of theft of property. Under the new Criminal Code a person commits theft of property if he knowingly exercises unauthorized control over the property of another person with the purpose of depriving the owner thereof. Ark. Stat. Ann. § 41-2203 (Repl. 1977). It was reasonable for the trial judge to believe that if Jarrett meant to buy the large quantity of packaged meat he would have taken it to the check-out counter. Instead, he rolled the cart into a storeroom, where the public was not supposed to be, and began putting the meat into sacks. The trial judge could infer from the evidence that Jarrett was exercising unauthorized control over the property with the intention of taking it out of the store in sacks, as if it had been paid for. In fact, no other explanation for Jarrett's conduct is readily apparent.

The proof also supports the conviction for robbery, because the crime of robbery has been materially changed by the Criminal Code. As pointed out in the Commentary to Section 41-2103, under prior law robbery consisted of the felonious taking of money or other valuable thing from the person of another by force or intimidation. That definition put the primary emphasis upon the taking of property. But the Code redefines robbery to shift the focus of the offense from the taking of property to the threat of physical harm to the victim. As the Commentary states: "One consequence of

the definition is that the offense is complete when physical force is threatened; no transfer of property need take place."

Under the Code robbery is defined in this language:

A person commits robbery if with the purpose of committing a theft or resisting apprehension immediately thereafter, he employs or threatens to immediately employ physical force upon another. [§ 41-2103.]

"Physical force" means, among other things, any bodily impact or the threat thereof. § 41-2101

Needless to say, it is our duty to enforce the new statute as it is written, which we have actually already done in *Wilson v. State,* 262 Ark. 339, 556 S.W. 2d 657 (1977). Here the proof supports a finding that Jarrett, immediately after committing a theft, resisted apprehension by employing or threatening to employ physical force upon Officer Baer. The evidence therefore sustains the conviction.

Affirmed.

HICKMAN and PURTLE, JJ., dissent.

JOHN I. PURTLE, Justice, dissenting. I cannot compel myself to remain silent in view of the majority opinion. I could not sleep well if I refrained from registering this dissent. My brothers have again confounded me by their reasoning in affirming this case. Apparently the prosecuting attorney wanted to see how far he could go with a literal interpretation of the language in our new Criminal Code. It would be funny if we were not dealing with the liberty of another human being.

Robbery is defined in Ark. Stat. Ann. § 41-2103 (1) (Repl. 1977):

A person commits robbery if with the purpose of committing a theft or resisting apprehension immediately thereafter, he employs or threatens to immediately employ physical force upon another.

Appellant had placed some meat from a shelf in a grocery store in a sack while he was in the back of the store. The officers were perched upon their seat behind one-way mirrors and observed what appeared to be a theft in the making. Before appellant attempted to leave the store the officer rushed him and he started to flee. Thereupon the officer drew his service revolver and ordered appellant to stop as he obviously did. While the officer was holding his revolver in one hand he was attempting to handcuff the appellant with the other. After clamping his left hand into the cuffs he attempted to put the other one on while appellant was resisting the force being used upon him. About this time the revolver discharged and both men became frightened and settled down. There is no indication appellant exerted any force whatsoever except to try to keep from being handcuffed. He made no threats to employ physical force upon anyone so far as the record reveals. Obviously the main force used was by the officer while he was trying to handcuff appellant to a wire on a baler machine. Naturally, there was physical force when appellant pulled back. The two may have even scuffled but the most that can be said is that appellant was resisting arrest. The officer stated: "He was continually trying to break and get away."

Appellant had no weapon other than the meat he had placed in a sack. He inflicted no injury upon the officer. Nevertheless, he was charged, convicted and sentenced to five years in the Department of Correction for "robbery."

I do not believe the General Assembly intended that every supposedly attempted theft would be considered a robbery. If they did, the comments following § 41-2103 and common sense no longer have any application to the law. Most any shoplifting or theft or resisting arrest case is now classified as a robbery if this opinion stands.

There was only one entrance and exit from this Safeway Store on Asher Avenue. The appellant would have to have attempted to walk past the checkout counters with his bag of groceries before he could reasonably have been charged with attempted theft. Witnesses for appellant contended he was there for the purpose of purchasing items and the facts do not dispute this, except it would be unusual to put the meat in a

sack instead of a cart. I am sure he probably intended to try to steal the items but he was still in the preparation and planning stages inside the store when he was handcuffed and arrested. The store employee testified the meat was still in the cart. I don't know whether it was in a sack or a cart but it was still inside the store and it never left the store. Appellant never attempted to leave the store without paying for the meat or whatever it was.

Giving the evidence its highest probative value, appellant possibly committed the offense of resisting arrest pursuant to Ark. Stat. Ann. § 41-2803 (Repl. 1977). Unless this statute was intended to apply in cases like this, it may as well never have been enacted.

In practical application the majority view here would allow a robbery conviction for a person who took a 15-cent item and ran and, while running, accidentally bumped into someone in a crowd of people. I believe in the strict enforcement of our penal statutes but I do not believe in applying them to abstract or ridiculous situations like this. It is no wonder our penal institutions are overflowing and that we have so much criticism of the Department of Corrections for releasing inmates early. I hope appellant is one of those who obtains an early release.

Our criminal justice system should be designed for the purpose of an equal application of the laws and to do justice. This Court is the last resort for those who feel they have not received justice in the lower courts, and if we fail them then they have nowhere else to turn. I submit that when we render an opinion affirming a conviction like this we have failed to look out for individual rights and the image and structure of our "Criminal *Justice* System."

I am authorized to state that HICKMAN, J., joins me in this dissent.