Gary MOORE, Jenni Moore, Kenneth Haskett, Paula McCray, and Nathaniel Billings *v.* STATE of Arkansas

CR 88-58                                          761 S.W.2d 894

Supreme Court of Arkansas
Opinion delivered December 12, 1988

298

*Boyd Tackett, Jr.* and *Kenneth G. Fuchs*, for appellants Gary Moore, Jenni Moore and Kenneth Haskett.

*Marva Davis* and *Phil Stratton Casey Jones, Ltd.*, by: *Phil Stratton*, for appellants Paula McCray and Nathaniel Billings.

*Steve Clark*, Att'y Gen., by: *Joseph V. Svoboda*, Asst. Att'y Gen., for appellees.

JACK HOLT, JR. Chief Justice. Appellants Gary Moore, Jenni Moore, and Kenneth Haskett appeal their convictions on charges of possession of a controlled substance with intent to deliver and possession of drug paraphernalia. Appellants Paula

McCray and Nathaniel Billings appeal from their convictions on charges of possession of drug paraphernalia. Trial was by jury; all five appellants were tried jointly and each elected not to testify.

On appeal, the Moores and Kenneth Haskett argue that the court erred: (1) in not granting a motion to sever based upon the introduction of incriminating statements by one or more of the codefendants; (2) in not directing a verdict when the State failed to make an in-court identification of defendants as the individuals having committed the crimes charged; (3) in failing to grant a continuance when the State did not produce its confidential informant; and (4) in not suppressing evidence obtained pursuant to an allegedly unlawful search conducted at the residence occupied by all five appellants. Only Haskett and Jenni Moore argue that the trial court erred in not directing a verdict in their favor based upon insufficiency of the evidence.

In a separate brief, appellants McCray and Billings argue only two issues. They contend that the court erred in not granting a motion to suppress which challenged the validity of the search warrant as to their separately rented room and that the court should have dismissed the charges because the term "paraphernalia" was impermissibly vague.

We find that the evidence was insufficient as to Jenni Moore and therefore reverse and dismiss her convictions. Next, throughout the proceedings below appellants sought a severance and at one point joined in a motion for mistrial (the severance and mistrial motions were renewed at the close of the State's case) in response to the State's introduction of testimony concerning incriminating statements by nontestifying codefendants. While the arguments on this issue by the Moores and Haskett tend to focus primarily on the trial court's failure to sever appellants' trial, the arguments by their very nature challenge the court's related failure to grant a mistrial. Because we find that prejudicial error occurred on this point, we reverse and remand as to appellants Gary Moore and Kenneth Haskett. We comment on their remaining arguments only to the extent they are relevant to a retrial.

Notwithstanding that appellants McCray and Billings joined in the severance and mistrial motions, the trial court's failure to grant those motions has not been raised as an issue by

them on appeal. Because we find no merit to the points they have raised, we affirm their convictions and address their arguments separately.

## JENNI MOORE AND KENNETH HASKETT

## SUFFICIENCY OF THE EVIDENCE

After the State had rested its case, appellant Kenneth Haskett moved for a directed verdict on grounds that there was insufficient evidence to convict him on charges of possession with intent to deliver and possession of drug paraphernalia. A similar motion was made by appellant Jenni Moore. The trial court denied both motions.

Where there is a challenge to the sufficiency of the evidence, we must decide that issue on appeal even though the case is being reversed and remanded on other grounds. *Harris* v. *State*, 284 Ark. 247, 681 S.W.2d 334 (1984). In considering the issue, we disregard other possible trial errors. *Harris supra; Birchett* v. *State*, 289 Ark. 16, 708 S.W.2d 625 (1986).

The question on appeal is whether the verdict is supported by substantial evidence. Whether direct or circumstantial, the evidence must be of sufficient force that it will, with reasonable and material certainty and precision, compel a conclusion one way or the other. *Gardner* v. *State*, 296 Ark. 41, 754 S.W.2d 518 (1988). In determining the sufficiency of the evidence, it is necessary to ascertain only the evidence favorable to the appellee State, and it is permissible to consider only that testimony which supports the verdict of guilt. *Id.*

At trial, the State introduced testimony that Kenneth Haskett occupied the northeast bedroom of the Moore residence. A search of that bedroom produced a red and black plaque depicting a marijuana leaf, a paper bag with two baggies containing between fifteen and sixteen ounces of marijuana, and a can containing a roach clip with a partial marijuana cigarette, straws and a razor blade. The evidence against Kenneth Haskett was clearly sufficient to support his convictions.

The same cannot be said of appellant Jenni Moore. The search warrant in this case specified that it was for the residence of "Gary Moore . . . also occupied by a Kenneth Haskett." No

mention is made of a Jenni Moore. At trial, one of the State's witnesses testified that the southwest bedroom of the Moore residence was occupied by appellants McCray and Billings, the northeast bedroom by Gary Moore, and the northwest bedroom by Kenneth Haskett. Again, there is no mention of Jenni Moore. Further testimony revealed that when the warrant was served, a "white female" was sitting in the living room. At times this individual is identified as "she" or the "lady."

While the record discloses that marijuana and drug paraphernalia were discovered in the living room, nowhere is there any reference to appellant Jenni Moore as the person seated in the living room. In fact, it does not appear that any of the State's witnesses ever mentioned Jenni Moore's name in connection with the evidence introduced at trial.

■ It is axiomatic that substantial evidence must force or induce the mind to pass beyond *suspicion or conjecture. Gardner, supra.* Where, as here, there is no evidence from which the jury could find the defendant guilty without resorting to surmise or speculation, a directed verdict is proper. We find it inconceivable how appellant Jenni Moore could have been convicted of the crimes charged absent pure conjecture that she was the individual in the living room. Accordingly, we reverse and dismiss her convictions for possession with intent to deliver and possession of drug paraphernalia.

## GARY MOORE AND KENNETH HASKETT

### SEVERANCE—MISTRIAL

Before trial, appellant Haskett filed a motion to sever because it was expected that the State would try — despite each codefendant's desire not to testify — to introduce evidence of statements made by one or more of the codefendants which implicated everyone at the Moore residence. The motion was joined by each appellant but was denied by the court.

The State's intent was to introduce the contents of an oral statement by appellant Paula McCray which implicated Gary Moore and Nathaniel Billings and the contents of another statement by Gary Moore in which the investigating officer quotes Moore as admitting that "they" obtained the marijuana discovered at the residence from some named individual. At trial,

Haskett's counsel renewed the severance motion and cited Rule 22.3(a) of the Arkansas Rules of Criminal Procedure, which provides:

> When a defendant moves for a severance because an out-of-court statement of a codefendant makes reference to him but is not admissible against him, the court shall determine whether the prosecution intends to offer the statement in evidence at the trial. If so, the court shall require the prosecuting attorney to elect one (1) of the following courses:

> (i) a joint trial at which the statement is not admitted into evidence;

> (ii) a joint trial at which the statement is admitted into evidence only after all references to the moving defendant have been deleted, provided that, as deleted, the statement will not prejudice the moving defendant; or

> (iii) severance of the moving defendant.

Upon renewal of Haskett's motion to sever, the State opted to proceed under subsection (ii) of Rule 22.3(a), and the court once again denied the severance motion.

Under subsection (ii), the prosecutor replaced the pronoun "they" in Moore's statement as given to the officer with the pronoun "he." This had the effect of removing any reference in the statement to the remaining defendants because the statement now suggested that Gary Moore obtained the marijuana without the participation of the remaining appellants. The State then introduced the contents of Moore's altered statement through the testimony of Officer A. J. Gary as follows:

> Q. [D]id you ask Gary Moore where he had gotten or what he knew about those two sacks of what you identified to him as marijuana, when you asked him a question?

> A. Yes, I did.

> Q. All right. And, what did he say about where he had gotten the marijuana?

A.  Gotten it from a girl by the name of Sissy Rogers.

On cross-examination by counsel for one of the appellants, the officer was asked,

> [Y]ou said that he said that he got the. . . marijuana from a lady named Sissy Rogers?

The officer inadvertently responded,

> He [Moore] advised that *they* had gotten it. [Emphasis ours.]

Haskett's counsel immediately requested a mistrial since Officer Gary's testimony which quoted Moore as saying "they," as opposed to the agreed substitution "he," shifted the incriminating effect of the statement from Moore to all of the appellants as a group. The trial court denied the motion.

There followed a protracted exchange between court and counsel as to the requirements of Rule 22.3, the purpose for the earlier motion to sever, and the significance of the officer's use of the pronoun "they" instead of "he." The net result of the exchange by court and counsel was a second motion for mistrial which was joined by all defendants but was denied by the court. The mistrial and severance motions were renewed at the close of the State's case but were again denied.

Although labeled on appeal as error for failure to grant a severance, the claim by Moore and Haskett is in reality a claim of error for failure to grant a mistrial, and we treat it accordingly. Appellants' motion for mistrial was part and parcel of the position maintained throughout the proceedings that a severance should have been granted and, at this juncture of the trial, the only manner by which the trial court could have perfected a severance would have been to grant appellants' motion for a mistrial.

■  Where two or more defendants are tried jointly, the pretrial confession of one which implicates the other is not admissible against the other unless the confessing defendant waives his Fifth Amendment rights so as to permit cross-examination. *Cruz* v. *New York*, 481 U.S. 186 (1987).

In the case at bar, all five appellants had chosen not to testify. In *Burton* v. *United States*, 391 U.S. 123 (1968), the Supreme

Court held that a defendant is deprived of his rights under the Confrontation Clause when a codefendant refuses to testify but the codefendant's incriminating confession is introduced at their joint trial, even if the jury is instructed to consider that confession only against the codefendant. In *Cruz, supra,* the Court applied the same rule where the defendant's own interlocking confession had been introduced.

However, in *Richardson v. Marsh,* 481 U.S. 200 (1987), the Court held that admission of a nontestifying codefendant's confession does not violate the defendant's rights under the Confrontation Clause if the court instructs the jury not to use the confession in any way against the defendant, *and the confession is "redacted" to eliminate not only the defendant's name but also any reference to the defendant's existence.* The rationale of the Court's holding in *Richardson* is reflected in our Rule 22.3.

Pursuant to Rule 22.3(a), where two defendants are tried jointly, neither testifies, and the State chooses to introduce the out-of-court statement of one which implicates the other, the court *shall* sever the trial upon motion by the latter defendant unless: (1) the prosecution decides not to introduce the statement; or (2) all references in the statement to the moving defendant are deleted, and the statement does not, as altered, prejudice the moving defendant. The rule is mandatory.

The prosecution chose to proceed under Rule 22.3(a) by changing the pronoun "they" in Moore's statement to "he" in order to limit the statement to Moore and avoid any reference to the other defendants. We commend the effort to comply with 22.3. However, the State's effort to comply with Rule 22.3 collapsed when the officer inadvertently used the pronoun "they" — reflecting Moore's statement as recorded but not as altered by the State during trial pursuant to the rule. The rights sought to be protected by the holdings in *Bruton* and *Richardson* were jeopardized, and it is clear that the appellants who raise this issue on appeal were prejudiced.

In an effort to protect their respective clients at the time of the mistrial motion, several of the attorneys argued that cross-examination of the officer should be permitted to show that "they" did not refer to any of the various codefendants other than Gary Moore. Counsel for Moore, however, argued that a reasona-

ble inference to be drawn from Moore's actual statement that "they" obtained the marijuana was that the appellants as a group, *excluding Moore*, got the marijuana from Sissy. Accordingly, Moore's counsel argued that he should be permitted to question Officer Gary in that regard and further determine why on direct examination the officer had used the substituted pronoun "he" when his notes said "they" and the officer later said "they" on cross-examination.

■ How can we expect jurors to dispell the inference that appellants obtained the marijuana as a group when the attorneys themselves could not sort out the implications of altering Moore's statement to "he" — when in fact Moore had said "they" — and the officer testified *both ways* on the stand? The situation was further prejudicial to appellant Gary Moore by virtue of the inference that "they" could have included or excluded Moore from those who allegedly obtained the marijuana. Under the circumstances, we conclude that it was error not to sever the cases and grant the motion for mistrial at the time that request was entered.

Relying on *Bruton*, Gary Moore and Haskett also contend that the trial court should have sustained an objection to statements introduced at trial in which Paula McCray implicated Gary Moore and Nathaniel Billings. Appellants are correct. This is so even if Gary Moore's allegedly interlocking confession had been properly introduced earlier. *Cruz, supra.*

Accordingly, we reverse and remand as to appellants Gary Moore and Kenneth Haskett but not as to appellants Paula McCray and Nathaniel Billings since on appeal they have elected not to contest the court's failure to sever or the failure to grant a mistrial.

### DIRECTED VERDICT — IDENTIFICATION

At the close of the State's case, Haskett's counsel moved for a directed verdict on the grounds that at no time had any of the State's witnesses actually identified the various defendants present in court as those who participated in the crimes charged. The motion was joined by all five defendants but was denied by the court.

Our examination of the record discloses that during the

State's case several witnesses identified by name those individuals arrested in the residence where the marijuana and drug paraphernalia was discovered. However, the record is not clear as to whether at any time during trial (in the presence of the jury) the State explicitly identified *the defendants in court* with the named individuals to whom the State's evidence related.

It is beyond dispute that "an element to be proved in every case in that the person who stands before the court in the position of defendant is the one whom the indictment or information accuses and to whom the evidence is supposed to relate." *United States* v. *Fenster*, 449 F. Supp. 435 (E. D. Michigan, 1978); *McClard* v. *United States*, 386 F.2d 495 (8th Cir. 1967) (Lay, Judge, dissenting), *cert. denied*, 393 U.S. 866 (1968).

Since we reverse and remand as to appellants Gary Moore and Kenneth Haskett on another ground and because it is unlikely that the State's proof would be presented in the same fashion in the event of retrial, we do not address this point further.

## CONTINUANCE

On April 2, 1987, the Moores filed motions requesting that the State's confidential informant be produced and that a continuance be granted until the informant could be made available for examination. At a pretrial hearing, the court ruled on the motion by stating, "motion to produce confidential informant, granted." However, appellants' case was brought to trial four days later without the informant having been located. An objection (later overruled) was filed on the grounds that this prejudiced appellants' right of cross-examination and constituted an abuse of discretion in light of the earlier ruling.

Our case law governing the State's obligation to disclose the identity of its confidential informants controls the issue before us. That law supports the trial court's decision.

In *McDaniel* v. *State*, 294 Ark. 416, 743 S.W.2d 795 (1988), we noted that where an informant is present or participates in the crime with the defendant, his testimony would be relevant, and it would be prejudicial error for the State not to reveal the informant's identity. When, however, there is no evidence that the informant participated in the crime, was a witness to the crime, or possessed any exculpatory information,

failure to identify the informant is not in any way prejudicial to the appellant's defense. *See Sanchez* v. *State*, 288 Ark. 513, 707 S.W.2d 310 (1986).

The informant in this case did not participate in the crime, and appellants have failed to establish that the informant would have been able to offer any relevant testimony. In fact, appellants' stated purpose for calling the informant as a witness was to show that he had been paid for his information. We find no abuse of discretion by the trial court under these circumstances.

## UNLAWFUL SEARCH

Under this heading the Moores and Kenneth Haskett contend that evidence seized pursuant to the warrant should have been suppressed because the officer who obtained the warrant failed to disclose the basis for his statement that the confidential informant was reliable. Appellants McCray and Billings raise the same point. The Moores and Haskett also argue that reversible error occurred in that the search was executed after dark whereas the warrant did not authorize a nighttime search. We find no error in the trial court's refusal to suppress the evidence.

Rule 13.1(b) of the Arkansas Rules of Criminal Procedure provides that if an affidavit or testimony is based in whole or in part on hearsay, the affiant or witness shall set forth particular facts bearing on the informant's reliability. The rule also requires that the affiant disclose, as far as practicable, the means by which the information was obtained.

The affidavit in support of the warrant issued by Chancery Judge Andre E. McNeil sets forth that an unnamed individual notified Officer Gary that he had recently observed a metal tray in the residence of Gary Moore containing what appeared to be marijuana and that he observed a black female rolling marijuana cigarettes from the material in the tray. The affidavit then states that the informant had been proven reliable and had helped in solving eleven burglaries and one controlled substance case.

The affiant, Officer Gary, testified at a pretrial hearing that the confidential informant had been referred to the Conway Police Department by the Faulkner County Sheriff's Department because the case involving appellants was within the city's jurisdiction. Officer Gary was given the information concerning

the informant's reliability by Investigator Jerry Bradley of the sheriff's office who had worked directly with the informant on the burglaries. Bradley not only went with Officer Gary to Judge McNeil's office to obtain the warrant but also went to the Moore residence and subsequently participated in the search.

■ We do not consider the warrant and underlying affidavit at issue defective merely because the officer executing the affidavit was not a member of the law enforcement agency directly acquainted with the informant's reliability. *Baxter* v. *State*, 262 Ark. 303, 556 S.W.2d 428 (1977). While the affidavit in *Baxter* actually contained the statement that the informant had proven reliable to some *outside law enforcement agency*, which was not disclosed here, even that statement was found not to be sufficient in and of itself, and this court emphasized those factors which we considered more relevant to a determination of the informant's reliability. Here, we find that the affidavit states the informant had helped in solving eleven burglaries and one controlled substance case and that he personally witnessed the events at the Moore residence.

Also, the record shows that Officer Gary testified before Judge McNeil in the presence of Investigator Bradley as to the exact information contained in the affidavit. While it may have been better practice under Rule 13.1(b) had Officer Gary specified to Judge McNeil that Bradley was the one directly acquainted with the informant, we cannot say that the circumstances dictate the conclusion that the affidavit, warrant, and subsequent search were invalidated by his failure to do so.

■ In any event, the facts in the case at bar clearly come within the "good faith" exception announced in *United States* v. *Leon*, 468 U.S. 897 (1984). *See also Jackson* v. *State*, 291 Ark. 98, 722 S.W.2d 831 (1987).

■ Appellants further contend that the court should have granted the motion to suppress because the search was commenced after dark. *See* A.R.Cr.P. Rule 13.2(c). The argument is without merit. Officer Gary testified that the search was commenced before 8:00 p.m., which complies with Rule 13.2(c). *James* v. *State*, 280 Ark. 359, 658 S.W.2d 382 (1983).

## PAULA MCCRAY AND NATHANIEL BILLINGS

### INVALID WARRANT

Under this heading, separate appellants McCray and Billings contend that the trial court erred in not suppressing the fruits of the search conducted in one bedroom of the Moore residence. It was shown that McCray and Billings occupied that bedroom as tenants, and the warrant failed to authorize a separate search for that particular room. Appellants' position on this issue has been decided adversely to them on similar facts in *Maryland* v. *Garrison*, 480 U.S. 79 (1987). We find that decision controlling.

In *Maryland*, officers obtained a warrant to search the person of Lawrence McWebb and the premises known as "2036 Park Avenue third floor apartment." When the officers applied for the warrant they had reason to believe that there was only one apartment on the floor described in the warrant. In fact, the third floor was divided into two apartments, which the officers did not realize until heroin, cash, and drug paraphernalia had been found in the second apartment (occupied by someone other than McWebb).

In *Maryland* the Supreme Court considered both the validity of the warrant and the manner in which it had been executed. It was determined that the first issue was governed by the information available to the officers at the time the warrant was obtained. The officers had no reason to suspect that the third floor contained more than one apartment, and the warrant was therefore valid when issued. The same is true here. The Moore residence, from all appearances, was a single family dwelling. Nothing within the knowledge of the officers executing the warrant suggested otherwise.

The second issue in *Maryland*, execution of the warrant, was upheld because nothing occurred prior to discovery of the evidence in the second apartment which would have or should have alerted the officers that the third floor contained more than one apartment. The Court specifically noted that nothing McWebb did or said at the time of the search would have suggested to the officers that there were two apartments. Again, the same is true here. Notwithstanding that it later developed that the Moore residence contained several "leased" bedrooms,

nobody in the residence at the time of the search (including appellants McCray and Billings) brought that fact to the attention of the officers. Accordingly, we find no error on this point.

## VAGUENESS

McCray and Billings also argue that the term "paraphernalia" is unconstitutionally vague as it relates to our code provisions which make possession with intent to use drug paraphernalia a criminal offense. Ark. Code Ann. § 5-64-403(c)(1) (1987). Appellants contend that our code provisions fail for want of "certainty" or "definiteness" and that they do not give a person of ordinary intelligence fair notice that his contemplated conduct is forbidden. Nothing could be further from the truth.

Ark. Code Ann. § 5-64-101(y) (1987) defines the term "drug paraphernalia." The definition is exhaustive. Not only are the kinds of materials which constitute drug paraphernalia specified, but well over twenty terms are given which classify the activities relevant to a determination of whether an item is considered drug paraphernalia. Subsection (y) is followed by twelve subdivisions which list dozens of items and circumstances further defining drug paraphernalia. Virtually every item confiscated as drug paraphernalia from the Moore residence and the bedroom occupied by McCray and Billings is included on the list — by name.

Subsection (12) alone specifies fourteen items considered drug paraphernalia and provides additional relevant explanations. Ark. Code Ann. § 5-64-101 is then further divided to assist in the determination of whether an item is drug paraphernalia by emphasizing the proximity of the object to controlled substances, whether there is any residue of controlled substances on the object, or whether there are any descriptive materials accompanying the object which explain its use. Section 5-64-403(c)(1) provides an additional list of twenty terms which describe the activities prohibited in connection with drug paraphernalia.

■ The challenged code provisions clearly give a person of ordinary intelligence fair notice that his contemplated conduct is forbidden. Appellants' position on this issue is entirely without merit. *See also Garner* v. *White*, 726 F.2d 1274 (8th Cir. 1984).

■ We note that at the conclusion of the brief filed on

behalf of appellant Nathaniel Billings, counsel asks this court to award an adequate fee for services rendered. Apparently, counsel was appointed by the court below and his client is indigent. The proper motion in such cases should be filed in accordance with the requirements of Rule 28 of the Rules of the Supreme Court and the Court of Appeals.

Reversed and dismissed as to appellant Jenni Moore; reversed and remanded as to appellants Gary Moore and Kenneth Haskett; affirmed as to appellants Paula McCray and Nathaniel Billings.

PURTLE, J., dissents in part.

JOHN I. PURTLE, Justice, dissenting. The arrests in this case were set up by a paid informant (a convicted felon) who took the police's money, snitched on the Moores, and vanished. His whereabouts are still unknown. He had never been used by the Conway Police Department before and they had no information on his reliability except through a conversation with a deputy sheriff who did not furnish any factual information concerning the reliability of the informant. There is simply no proof of the reliability of the informant. Moreover there is nothing in the record which could be considered substantial evidence to uphold the convictions against Paula McCray and Nathaniel Billings.

McCray and Billings rented a room at the residence apparently owned or at least occupied by Gary and Jenni Moore. Also, another guest or boarder named Kenneth Haskett was present at that address. Although the informant apparently did not give the Moores' exact address, he did give enough information for the police to locate the Moores' residence.

At the time the officers arrived with the warrant, which I consider invalid, there was no mention of the name of McCray or Billings. They were, in fact, inside their rented room with the door locked. They responded only under duress. After illegally searching the room, the police recovered some items called drug paraphernalia — namely, a couple of pipes which could be used to smoke marijuana, or for that matter, tobacco.

A search warrant serves a high function and should be examined very closely and not issued in a cavalier fashion. The protection of the home is still sacred to the people of America.

One's privacy in his dwelling place should be zealously guarded and invasion of this right should not be viewed lightly by the courts. As the United States Supreme Court stated in *McDonald* v. *U.S.*, 335 U.S. 451 (1948):

> The right of privacy was deemed too precious to entrust to the discretion of those whose job is the detection of crime and the arrest of criminals. Power is a heady thing and history shows that the police acting on their own cannot be trusted. And so the Constitution requires a magistrate to pass on the desires of the police before they violate the privacy of the home. We cannot be true to constitutional requirements and excuse the absence of a search warrant without a showing by those who seek exemption from the constitutional mandate that the exigencies of the situation made that course imperative.

In the present case the dwelling place of McCray and Billings was invaded without a search warrant naming them or describing what was to be sought. There was a complete absence of compliance with the requirements of the Fourth Amendment prior to issuance of the search warrant, and then the warrant itself did not authorize the search of McCray's and Billings' rented quarters. It was in fact a warrantless search with respect to these two individuals.

The United States Supreme Court has further discussed such searches in the case of *Stoner* v. *California*, 376 U.S. 483 (1964), where it stated:

> No less than a tenant of a house, or the occupant of a room in a boarding house, . . . a guest in a hotel room is entitled to constitutional protection against unreasonable searches and seizures. That protection would disappear if it were left to depend upon the unfettered discretion of an employee of a hotel. It follows that this search without a warrant was unlawful. Since evidence obtained through the search was admitted at the trial, the judgment must be reversed.

I am most puzzled by the majority opinion because it affirms the conviction of the only two people who were obviously not guilty of the charge for which they were convicted. Certainly

without the evidence produced by the search the state would have no case against these two. Jenni Moore, who at the time of the raid was seated in the living area of the house amidst drug paraphernalia, has been discharged by this court. Her renters, who were in their private bedroom behind locked doors, have been left to suffer the penalties pronounced.

There was no warrant issued which permitted a search of the rented room of these two appellants. Nevertheless, by force, the officers intruded into their locked bedroom and searched it. There was no evidence found showing that McCray and Billings possessed drug paraphernalia. Moreover, no one, not even the so-called confidential informant, provided probable cause to search the room rented by McCray and Billings.

This is clearly a case where severance should have been granted. The failure to do so was prejudicial to all of the defendants in this case and it violated both our rules and our prior decisions. See A.R.Cr.P. Rule 22.3, which requires a severance when the statement of one codefendant is to be used in a trial against all of them. The effort to "Brutonize" the prior statement of Gary Moore resulted in prejudice to all the others. This stage of the trial was a complete fiasco, as revealed by the majority opinion. Why the reversal should not apply to all of the defendants is something I cannot understand.

I believe the case should also be reversed and remanded as to Paula McCray and Nathaniel Billings with directions to suppress the evidence against them.