James Allen BECKER *v.* STATE of Arkansas

CR 89-19                                  768 S.W.2d 527

Supreme Court of Arkansas
Opinion delivered April 24, 1989

*Norman Douglas Norwood*, for appellant.

*Steve Clark*, Att'y Gen., by: *R.B. Friedlander*, Solicitor General, for appellee.

ROBERT H. DUDLEY, Justice. The appellant, an habitual offender, was convicted of robbery pursuant to Ark. Code Ann. § 5-12-102 (Supp. 1987). That section provides:

> A person commits robbery if, with the purpose of committing a felony or misdemeanor theft or resisting apprehension immediately thereafter, he employs or threatens to immediately employ physical force upon another.

According to Ark. Code Ann. § 5-12-101 (1987), physical force is defined as "any bodily impact, restraint, or confinement or the threat thereof." The appellant argues that the trial court erred in refusing to direct a verdict in his favor because there was no proof that he used force to resist apprehension immediately after a misdemeanor theft. The argument is without merit.

The robbery statute has been followed in a number of cases

similar to the one now before us. *See Thompson* v. *State*, 284 Ark. 403, 682 S.W.2d 742 (1985); *Jarrett* v. *State*, 265 Ark. 662, 580 S.W.2d 460 (1979); *Wilson* v. *State*, 262 Ark. 339, 556 S.W.2d 657 (1977); *Williams* v. *State*, 11 Ark. App. 11, 665 S.W.2d 299 (1984); and *White* v. *State*, 271 Ark. 692, 610 S.W.2d 266 (Ark. App. 1981). In all of these cases the appellant was caught shoplifting and then used force to prevent apprehension.

In this case the evidence, viewed most favorably to the appellee, the State, as we must do, is as follows: A supermarket employee saw the appellant hiding some ham in his coat. The employee notified an off-duty police officer who helped with security in the store, and the officer watched the appellant leave without paying for the ham. The officer asked the appellant to follow him to the store office. After entering the office, the officer asked the appellant for some identification. The appellant said he had none and gave a false name. The policeman asked the appellant for the ham, and he gave it to him. The appellant was told he was under arrest for shoplifting. Appellant then took off his coat and gave it to the officer, as requested. The officer asked appellant to turn around and place his hands behind his head. The appellant refused. Appellant grabbed his coat and started for the office door. The officer grabbed the coat and forced appellant into a chair. The appellant jumped up, struck the officer in the chest, and once again started for the door. The two then struggled for some time before appellant was finally subdued. The officer testified that the time between the initial approach of the appellant and the time he was finally handcuffed was five minutes or less.

In *Wilson* v. *State*, 262 Ark. 339, 556 S.W.2d 657 (1977), a similar case, we defined "immediate" as "a reasonable time in view of particular facts and circumstances of the case under consideration." Here, the evidence was sufficient to establish a theft and the employment of force immediately after the theft to resist apprehension or arrest.

The appellant next argues that the robbery statute at issue should be declared unconstitutionally vague. The argument has no merit. In *Long* v. *State*, 284 Ark. 21, 680 S.W.2d 686 (1984), we said that a law will be held to be vague when it leaves the police or the fact finder free to decide, without a fixed

standard, what is prohibited.

The appellant contends that the statute is vague in that it refers to physical force upon another, while our cases refer to physical force upon the victim. Our cases do not change the wording of the statute, which clearly states that a defendant is responsible for the use of force on anyone either before, during or after the theft. The statute is not vague.

In his final argument the appellant contends that the trial court should have granted a directed verdict because he was not identified in court as the robber. This argument is also without merit. In *Moore* v. *State*, 297 Ark. 296, 761 S.W.2d 894 (1988), the same argument for a directed verdict was made, and we stated that "an element to be proved in every case is that the person who stands before the court in the position of the defendant is the one whom the indictment or information accuses and to whom the evidence is supposed to relate." Still, we declined to dismiss the case on that basis.

The reason is that identification can be inferred from all the facts and circumstances that are in evidence. *United States* v. *Weed*, 689 F.2d 752 (7th Cir. 1982); *Delegal* v. *United States*, 329 F.2d 494 (5th Cir.), *cert. denied*, 379 U.S. 821 (1964); *State* v. *Watts*, 72 N.C. App. 661, 325 S.E.2d 505 (1985); *Dillon* v. *State*, 508 P.2d 652 (Okla. Crim. App. 1973); *State* v. *Hill*, 83 Wash. 2d 558, 520 P.2d 618 (1974).

Here, there were no co-defendants; the defendant was tried alone. He was specifically identified as "Mr. Becker" and "the defendant" throughout the trial. The witnesses were eyewitnesses to the robbery, and the fact that none of them pointed out that the wrong man had been brought to trial was eloquent and sufficient proof of identity.

Affirmed.

HICKMAN and PURTLE, JJ., dissent.

JOHN I. PURTLE, Justice, dissenting. Either something is wrong with our criminal justice system or something is wrong with this case. No fair system of justice could sanction giving a man fifteen years in prison for stealing a few slices of ham. The prophecy made in the dissent in *Jarrett* v. *State*, 265 Ark. 662,

580 S.W.2d 460 (1979), has now been fulfilled. Although the ham slices in this case, which were in the appellant's jacket pocket, may have been worth more than the fifteen cents referred to in the *Jarrett* dissent, the principle is still the same. There it was stated: "In practical application the majority view here would allow a robbery conviction for a person who took a 15-cent item and ran and, while running, accidentally bumped into someone in a crowd of people."

The food store manager noticed the appellant putting the ham slices in his pocket and followed him to the cash register; observing that the appellant did not pay for the ham slices, the manager asked him to come of the office. An off-duty policeman, serving as a security guard for the store, assisted, and the appellant accompanied them to the store office. When asked for the ham, the appellant took it out of his coat pocket and laid it on the desk. The officer then took his coat. The coat, I am sure, was worth considerably more than the eighty-nine cent package of ham. After "ten or fifteen minutes," the appellant decided to leave. In getting up out of the chair, where he had been placed by the off-duty policeman, he shoved the officer. The manager of the store described the encounter between the officer and the appellant in the following words:

> The gentlemen doesn't have much of a shirt left on him because Jim is trying to hang on and he is trying to run. Becker was trying to get away from Officer Kibat. I don't think it was his intention to try to beat Officer Kibat. It really wasn't a fight, it was more or less Jim hanging on. I guess the part of the fight would be just trying to keep him there, would be part of the fight. The only thing that I seen the gentlemen, the contact that he put on Jim Kibat was when he was sitting in the chair and he came up like this and knocked him against the wall. I did not see any punches swung at any time from anybody. He did shove the police officer. . . . I did not see him strike the police officer with his fist. I did not find a weapon on Mr. Becker, I did not see a gun, or a knife or a baseball bat. When Mr. Becker came into the office and I confronted him he put the ham on the table. When he decided to leave he left both pieces of ham and a flint.

The statute which allows a misdemeanor to be elevated to the felony of robbery requires that a person committing a theft, in his effort to avoid apprehension, "employs or threatens to immediately employ physical force upon another." By no stretch of the imagination can it be said that the appellant, in attempting to avoid apprehension, was using the type of force envisioned by this statute. He had been in the office from ten to fifteen minutes before he decided to leave. All the force used in this case was directed at the appellant. At most, he bumped into the off-duty officer as he attempted to get up out of his chair to leave the office. He did not have a gun, knife, or other object or weapon and did not strike the officer or anyone else with his fist.

If the statute has no plain meaning to the majority, then it behooves them to overcome the argument of vagueness. The opinion does not do so. Any reasonable interpretation of the statute would seem to require the appellant either to use physical force directed at another person or to use threats to employ a gun or knife or some other weapon. He attempted to steal a small amount of ham. No doubt he was hungry. He probably would not have been given more than thirty days had he been charged with shoplifting, the actual offense, instead of the bootstrapped felony which resulted in a fifteen-year prison sentence.

Over one hundred twenty-five years ago, Victor Hugo, in *Les Miserables*, attacked the injustice of a system that sentenced a man to imprisonment for stealing a loaf of bread. Surely we have made a little progress since that time. Many persons who have taken a human life have received less punishment than the fifteen years meted out to the appellant who tried to pilfer a small package of ham. Justice and mercy cry out against the imposition of such disproportionate punishment. The store manager, who was present from start to finish of the episode, did not even know a robbery had occurred. The reason he did not know it was because only a misdemeanor had occurred.

It is cases like this which lead to the overcrowding of our prison system and the devouring of a substantial amount of our tax money. I believe in fair and just punishment delivered without undue delay. However, this case does nothing to promote a fair and just criminal justice system. It is, in fact, a blight upon our system. If this court will not correct it, then the Governor and the

General Assembly should.