Thomas WOMACK *v.* STATE of Arkansas

CR 89-171                                   783 S.W.2d 33

Supreme Court of Arkansas
Opinion delivered January 29, 1990

*Honey & Honey, P.A.*, for appellant.

*Steve Clark*, Att'y Gen., by: *R.B. Friedlander*, Solicitor General, for appellee.

JACK HOLT, JR., Chief Justice. The appellant, Thomas Womack, was convicted of two counts of delivery of cocaine and one count of delivery of marijuana and sentenced to forty years imprisonment and a fine of $50,000. For reversal, Womack contends that (1) he established the defense of entrapment by a preponderance of the evidence; (2) that the trial court erred in overruling his objection to hearsay testimony; (3) that the trial court erred in denying his motion for directed verdict based upon the State's failure to properly identify him at trial; and (4) that the court erred in allowing testimony concerning a criminal charge other than the one for which he was being tried. We find no error and affirm.

From February 2, 1988, until October 25, 1988, Arkansas State Police conducted an undercover drug operation in Ouachita County. Mark Tokie, an undercover agent employed by PLE, a private law enforcement firm, was hired by the LTV plant in East Camden to identify drug dealers and make buys on company property when possible.

The plan was that Tokie would work a month at LTV to "fit in" with and meet employees who were involved with drugs and work in cooperation with the police authorities in the area.

Tokie met Mike Nix on the first day he worked. Approximately six weeks later, Nix sold him marijuana. This was around April 15, 1988. On several occasions thereafter, Tokie "hit Nix up" for marijuana, and around the first week of May he had a conversation with Nix "about buying bigger amounts." On May 6, Nix introduced Tokie to Womack, an electrician at the plant, and told him (Tokie), "Here's the guy you need to talk to." Prior to this time, Tokie had no information that Womack was selling or using drugs.

On the same day, Tokie and Womack went out to Womack's truck. Womack smoked and Tokie simulated smoking marijuana, which was supplied by Womack. At trial, Womack's version of the facts was radically different from that of the State. He testified that Tokie brought up the subject of marijuana, suggested he use it to help his back problems, and then supplied it for them to smoke. According to Womack, Tokie told him he would like to locate some marijuana, and he (Womack) told Tokie he would "look around and see if he could find some."

Tokie and Womack spoke again on May 18. At 8:00 p.m. on May 31, Tokie and Womack met to conduct a drug transaction. Tokie followed Womack to a road leading to Womack's residence. Womack stopped on the road, got out of his truck, approached Tokie, and told him that they should do business on the road because his mother-in-law was living with him and his wife. Womack went back to his truck and returned with a shoebox containing ten bags of marijuana. Tokie paid him $80.00 for two half-ounces bags.

Once again, Womack's version of the facts was quite different from that of the State. Womack testified that Tokie

bought all of the marijuana in the shoebox and that he (Womack) put the money in a sack and laid it in a ditch to be retrieved by a guy from Bearden, who had brought the marijuana to him. Womack also stated that he made no money out of the deal but that he did get a "bud" of marijuana to smoke.

On July 10, Womack called Tokie and told him he had an "eight ball" of cocaine for him. They had discussed this transaction earlier in the week. Tokie and Womack met again at the same place where the previous buy had occurred. They got out of their vehicles and talked for a short time. Womack placed three ounces of cocaine on the front seat of his truck. Tokie heard someone else coming down the road and picked up the cocaine and put it in his pocket. Womack said, "Don't be alarmed. He's probably looking for some stuff, too." Tokie paid Womack $260 and took the cocaine.

According to Womack, the individual from Bearden placed the cocaine on the seat of his (Womack's) truck, and Tokie placed $260 on the seat of the truck and took the cocaine. The man from Bearden, who was hiding in the woods, got the money. Womack testified that he did not touch the cocaine.

On July 16, Womack called Tokie and told him he had two and one-half grams of cocaine that he wanted to sell. There was no prior plan or conversation to set up this transaction. The two men agreed that Womack would come over and deliver drugs to Tokie in his apartment. While Womack was in the apartment, he asked Tokie for a drink of water. When Tokie opened up the cupboard to get a glass for him, Womack put the cocaine in the cupboard. Tokie paid Womack $200 for the cocaine.

Tokie testified that his relationship with Womack was purely business in nature.

## ENTRAPMENT

Womack contends that he established the affirmative defense of entrapment by a preponderance of the evidence. In examining appellant's argument, it is obvious that his allegation of error is, in fact, that the trial court should have directed a verdict at the conclusion of the State's case on the ground that entrapment was established as a matter of law.

██ Entrapment is an affirmative defense, upon which the defendant bears the burden of proof by a preponderance of the evidence. *Wedgeworth* v. *State*, 301 Ark. 91, 782 S.W.2d 357 (1990); *McCaslin* v. *State*, 298 Ark. 335, 767 S.W.2d 306 (1989); *White* v. *State*, 298 Ark. 163, 765 S.W.2d 949 (1989). Entrapment occurs when a law enforcement officer or any other person acting in cooperation with him induces the commission of an offense by using persuasion or other means likely to cause normally law-abiding persons to commit the offense. Ark. Code Ann. § 5-2-209 (1987). Conduct merely affording a person an opportunity to commit an offense does not constitute entrapment. *Id.*

██ "Entrapment as a matter of law is established only if, viewing the evidence in a light most favorable to the State, there is no factual issue to be decided." *Wedgeworth, supra*; *Leeper* v. *State*, 264 Ark. 298, 571 S.W.2d 580 (1978). *See also Walls* v. *State*, 280 Ark. 291, 658 S.W.2d 362 (1983). Otherwise, entrapment is a question of fact for the jury to resolve. *Wedgeworth, supra.*

██ Here, there were factual issues to be decided by the jury as to whether or not the conduct of the authorities and the person acting in cooperation with them would have caused a law-abiding citizen to possess and deliver cocaine and marijuana. *See Wedgeworth, supra.* The trial court was correct in refusing to direct a verdict in favor of Womack.

## HEARSAY TESTIMONY

Womack argues that the trial court erred in overruling his objection to hearsay testimony.

On direct examination, Mark Tokie testified that he made a purchase of marijuana from Mike Nix on April 15. This was before Tokie met Womack. When the prosecuting attorney asked Tokie about his conversation with Nix concerning buying larger amounts of marijuana from another person, defense counsel objected on hearsay grounds, and the trial court sustained the objection. Tokie then testified concerning his meeting with Nix and his introduction to Womack. The following exchange then occurred:

Prosecutor: What happens in this meeting?

. . .

Tokie: Mr. Nix brought me up and introduced me to Thomas Womack and he said —

Defense counsel: Objection.

The Court: I'm going to overrule it right now.

Mr. Tokie: All Right. He introduced me to him and he said, "Here's the guy you need to talk to."

Defense counsel: Judge, I object to that.

The Court: Well, I've overruled that.

Defense counsel: Save our exceptions. I think it's hearsay.

The State claims that the testimony by Tokie that Nix introduced him to Womack and stated, "Here's the guy you need to talk to," was not hearsay since it was not offered for the truth of the matter asserted, but rather to show the basis of how Tokie first met Womack.

We need not address whether the testimony was inadmissible hearsay. Even assuming the trial court erred in admitting the testimony, the error was harmless beyond a reasonable doubt in that the prejudicial effect of the testimony was minimal and the evidence of guilt was overwhelming. *See Schneble* v. *Florida*, 405 U.S. 427 (1972). A defendant is entitled to a fair trial, not a perfect one. *Berna* v. *State*, 282 Ark. 563, 670 S.W.2d 434 (1984), *cert. denied*, 470 U.S. 1085 (1985).

## IDENTITY OF APPELLANT

Womack asserts that the trial court erred in denying his motion for directed verdict based upon the State's failure to identify him at trial. We disagree.

"[A]n element to be proved in every case is that the person who stands before the court in the position of the defendant is the one whom the indictment or information accuses and to whom the evidence is supposed to relate." *Moore* v. *State*, 297 Ark. 296, 761 S.W.2d 894 (1988). Identification of a defendant can be inferred from all the facts and circumstances

that are in evidence. *Becker* v. *State*, 298 Ark. 438, 768 S.W.2d 527 (1989).

In *Becker*, we held that there was sufficient proof of identity, stating:

> Here, there were no codefendants; the defendant was tried alone. He was specifically identified as "Mr. Becker" and "the defendant" throughout the trial. The witnesses were eyewitnesses to the robbery, and the fact that none of them pointed out that the wrong man had been brought to trial was eloquent and sufficient proof of identity.

In the case at bar, Tokie testified that Womack was the person from whom he purchased marijuana and cocaine. Womack was tried alone and was identified as "Mr. Womack" or "Thomas Womack" throughout the trial. Furthermore, Tokie was a participant in the drug buys and did not point out that the wrong man had been brought to trial. In sum, this was sufficient proof of identity.

## OTHER CRIMINAL CHARGES

Womack contends that the trial court erred in allowing testimony concerning a criminal charge other than the one for which he was being tried. This argument is without merit since Womack's counsel raised the issue by electing to recall Womack to the witness stand on redirect, at which time Womack furnished testimony as to the other charge.

A bench conference took place during cross-examination of Womack in which the issue of the admissibility of the other charge was addressed by counsel and the court. After a lengthy exchange concerning the admissibility or inadmissibility of facts relating to the "Calhoun County case," the court stated: "I think they can go into it." Womack's counsel replied, "I want to save my exceptions to that ruling. But then based on that ruling, I feel like I must inquire about it."

Womack's counsel then elected to place Womack on the stand for a brief redirect examination:

Q. Mr. Womack, you are charged with three transac-

tions in this county—one marijuana, two being cocaine.

A. (Nods affirmatively).

Q. Now that's not the only charges that are against you or is it sir?

A. No sir.

Thereafter, the State presented testimony of Mark Tokie as a rebuttal witness; however, from our examination of the appendices the testimony has no relationship to the criminal charge other than the one for which Womack was being tried.

Notwithstanding the fact that the court in its ruling indicated that it thought the State could go into the matter of the other criminal charge, it was Womack who raised the issue of the charge when he testified on redirect examination. He cannot now be heard to complain of that for which he was responsible. *Berry v. State*, 278 Ark. 578, 647 S.W.2d 453 (1983); *Kaestel v. State*, 274 Ark. 550, 626 S.W.2d 940 (1982). *See also Aaron v. State*, 300 Ark. 13, 775 S.W.2d 894 (1989); *Williams v. State*, 288 Ark. 444, 705 S.W.2d 888 (1986).

Affirmed.

HICKMAN, J., concurs.